John Brenton PRESTON, Plaintiff-Appellant,

v.

Arthur PIGGMAN et al., Defendants-Appellees.

No. 73–1859.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 31, 1974.

Decided April 18, 1974.

Robert Allen Sedler, Lexington, Ky., for appellant; Richard N. Rose, Lexington, Ky., on brief.

Thomas A. Ainley, Asst. Atty. Gen., for appellees; Ed W. Hancock, Atty. Gen., Frankfort, Ky., on brief.

Before PHILLIPS, Chief Judge, MILLER, Circuit Judge, and Mc-ALLISTER, Senior Circuit Judge.

WILLIAM E. MILLER, Circuit Judge.

Recent decisions of the United States Supreme Court have recognized that parole cannot be revoked without affording the parolee the procedural fairness guaranteed by the due process clause of the fourteenth amendment. Morissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed. 2d 656 (1973). On this appeal we are called upon to decide whether certain revocation procedures of the Kentucky Parole Board comply with this standard.

In March of 1971 the appellant was paroled from a life sentence for armed robbery. His parole was conditioned on his not entering Johnson County, Kentucky, (the county in which he was tried and convicted) and the contiguous counties. Among these "forbidden counties" was Magoffin—appellant's home county and the one in which his parents and relatives lived. The Parole Board placed him with his sister, Mary Lou Brown, who operated a restaurant in California. Appellant worked in the restaurant until it was sold by the sister when she decided to return to Magoffin County, Kentucky.

Appellant then petitioned the Kentucky Parole Board to allow him also to return. After considerable delay, the Board agreed but refused to allow him to enter Magoffin County. Instead, appellant's new parole district was Lee County, Kentucky, where he was to work for and live with the Charles Brothers, a country music group. The playing engagements of the Charles Brothers were so few that appellant was unable to make a living from this association. Moreover, the housing conditions with the Charles Brothers and their families became so crowded that appellant eventually had to live in the back of an old station wagon.

Appellant notified his parole officer, Jesse Van Cleve, of his difficulties and requested that he be allowed to return to Magoffin County where there was work for him, and where he could live with either his mother or his sister. Van Cleve later testified before the district court that he and his supervisor, Tom Douglas, "talked about it that the boy just couldn't survive where he was and there would have to be something done about it." However, the Parole Board did not act on appellant's request.

In May of 1972 appellant contacted an attorney to see whether legal action could be taken to have the conditions of his parole changed so that he could move to Magoffin County. As a result, in June of 1972 a suit was filed in the court below alleging that the Board had acted unconstitutionally in prohibiting appellant from entering Magoffin County. Before the court held a hearing in the case, appellant returned to Magoffin County to live with his mother and sister. While there he apparently did not report to his parole officer in Lee County. As a consequence, the Parole Board issued a notice of a preliminary hearing on the revocation of appellant's parole. The reasons given for the hearing were that he had left the parole district without permission and had absconded—failed to report to the parole officer and make his location known to him. The hearing was to be held at the Estill County Jail on August 28, 1972. Appellant later testified that he feared going

to the jail because he believed that the Board might have him incarcerated. So, instead of appearing at the preliminary hearing, he went to Jackson, Michigan, and took a job there. The hearing was held despite appellant's absence, and a parole violation warrant was issued for his arrest. He was soon found and returned to Kentucky.

On November 15, 1972, the Parole Board held a formal parole revocation hearing. Appellant's written request for permission for his retained counsel to attend the hearing was denied, but no reason was given for the denial. According to the testimony of Mrs. Lucille Roebuck, chairman of the Parole Board, the revocation hearing lasted no longer than five minutes. The sole purpose of the hearing was to determine whether appellant had left the district without permission and had absconded. It was the Board's fixed policy to revoke parole if the parolee violated any of the restrictions placed upon him. The proceedings made no provision for the parolee to offer evidence or testimony in mitigation of his offense. Appellant was asked to leave the hearing room, and the Board voted to revoke parole and defer any further action for two years. He was then imprisoned in the state pentitentiary at Eddyville.

Shortly after appellant's lawyer learned that a parole violation warrant had been issued, he sought to amend the original complaint to add the members of the Parole Board as parties defendants and also to challenge the validity of the revocation proceedings. Additionally, he sought declaratory relief and a temporary restraining order to enjoin continuation of the proceedings. Although the court granted leave to amend, it denied the motion for a temporary restraining order. After the Parole Board had already made its decision and revoked parole, the district court held an evidentiary hearing on appellant's amended complaint. Subsequently, the court dismissed the complaint. In its memorandum opinion the court held that the challenge to the conditions of parole were rendered moot by the subsequent parole violation and reincarceration of the appellant. Furthermore, due process was found to have been satisfied by the procedures followed by the Board in revoking appellant's parole.

We first consider the two procedural issues raised on this appeal: first, whether the Parole Board should have made provision in its proceedings for the presentation by appellant of evidence of mitigating circumstances that might have justified a sanction less severe than revocation; and second, whether appellant should have been permitted to have the assistance of his privately retained attorney at the revocation hearing.

Parole is no longer a state of administrative grace that may be summarily and arbitrarily ended at the whim of a parole board. Gagnon v. Scarpelli, 411 U.S. 778, 782 n. 4, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Rather, a parolee has substantial liberty. Although such liberty is not the equivalent of that enjoyed by an ordinary citizen, it is greater than that enjoyed by one incarcerated for a crime. However this liberty may be restricted, it may not be terminated without the rudiments of procedural due process. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). What is at stake is not simply technical legal notions of what steps must be followed in a revocation hearing. Instead, there is involved "a profound attitude of fairness between man and man, and more particularly between the individual and government. . . . " Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 162–163, 71 S.Ct. 624, 643, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). The concept of fundamental fairness was obviously at the heart of its decision when the Supreme Court in *Morrissey* defined certain procedures that must be followed before parole may be revoked.

The Court spoke of revocation of parole as a two-step process. The first is a preliminary hearing at the time of

arrest or detention to determine whether there is probable cause to believe that the parolee has violated the conditions of his parole. The second involves the more comprehensive revocation hearing itself. At this second hearing the Board must resolve disputed facts and decide "whether the facts as determined warrant revocation." 408 U.S. at 488, 92 S.Ct. at 2603. Crucial to the issue now before us the following characterization by the Court of the revocation hearing:

"The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." 408 U.S. at 488, 92 S.Ct. at 2603.

■■ Thus, due process requires that a parolee who has admitted violating a condition of his parole is still entitled to present evidence in mitigation. In consequence, the Board must consider and evaluate the mitigating circumstances before it decides whether revocation is appropriate. As the Court of Appeals for the Seventh Circuit has well said:

"Breach of parole conditions is a necessary but not sufficient ground for parole revocation, for the board is required to determine whether the violator is still a good parole risk, and he may bring extenuating circumstances to the board's attention." Caton v. Smith, 486 F.2d 733, 735 (7th Cir. 1973).

This rule is well designed to serve both the interest of the parolee in being fully heard before his case is decided, and the interest of society in advancing the cause of rehabilitation by eliminating any reason for reaction to arbitrary decisions. 408 U.S. at 484, 92 S.Ct. 2593.

Had appellant been given the opportunity, it would appear that he could have presented evidence of mitigating circumstances. The job which he originally had in Lee County had become sporadic and did not provide him with a living wage. Moreover, the transcript of the testimony before the district court indicates that a job was difficult for appellant to find in Lee County since he knew no one there and was handicapped by an artificial leg that prohibited his doing certain kinds of strenuous work. As already mentioned, the parole officer agreed that appellant was in extreme difficulty and even discussed the matter with his superior, yet permission to leave the county was not forthcoming. These are the types of circumstances that are clearly relevant to a Board decision whether the violation of a restriction warrants revocation of parole.

■■ We are not persuaded by the suggestion in appellees' brief that appellant waived his right to present evidence of mitigating circumstances because he did not make an appropriate request at the hearing. The responsibility rests with the Parole Board to conduct a proper hearing no matter how informal, which meets the basic requirements of due process and which, more specifically, contains those procedures outlined by the Supreme Court in *Morrissey*, 408 U.S. at 487–490, 92 S.Ct. 2593. A waiver of a constitutional right, particularly one involving individual liberty, must be knowingly and intelligently given. Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L. Ed.2d 747 (1970). In the present case there is no indication in the record that appellant was advised by the Board of his right to present mitigating evidence; nor is there any indication of a specific waiver. Certainly a waiver cannot be presumed from a silent record. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

■ Of equal importance in rejecting the claim of waiver, is the inescapable conclusion that even had appellant presented evidence in mitigation, it would not have been considered by the Parole Board. Mrs. Roebuck, chairman of the Board, testified that it was the policy of the Board to revoke parole for all violations, no matter how technical. This policy was manifested in the sum-

mary, five minute proceeding held by the Board.[1]

We hold that appellant is entitled to a revocation hearing that conforms to the principles of Morrissey v. Brewer, *supra*, including the right to introduce evidence of mitigating circumstances and the right to have that evidence considered by the Board before it reaches its decision. Although parole boards have wide discretion in fashioning appropriate conditions of parole, they may not impose restrictions that are arbitrary or unreasonable. Hyland v. Procunier, 311 F.Supp. 749, 750 (N. D.Calif.1970). Moreover, circumstances change. Conditions proper when imposed may, after the passage of time or the development of new situations, become unreasonable and unfairly burdensome. On remand the Parole Board should consider whether the admitted violation warrants revocation of parole, particularly in light of the parole officer's statement that the original placement was not a suitable one and that the unavailability of work in Lee County forced appellant to "live off the land."

At the revocation hearing appellant is entitled to be represented by his attorney who should be allowed to present witnesses and cross-examine those who testify against appellant. In Gagnon v. Scarpelli, 411 U.S. 778, 93 S. Ct. 1756, 36 L.Ed.2d 656 (1973), the Court held that although the assistance of counsel at a revocation hearing is not a constitutional right in all cases, the right does presumptively exist where "even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate," or where the reasons for mitigation are complex or otherwise difficult to develop. 411 U.S. at 790, 93 S.Ct. at 1764. We believed that this case meets these criteria. Counsel

will be necessary to investigate and present to the Board in an orderly fashion the circumstances surrounding appellant's employment and living difficulties in Lee County and also his communications with the parole officials. Undoubtedly, factual issues will be in dispute, and witnesses will be presented by both sides. Our reading of the transcript of the hearing before the district court convinces us that if these issues are to be thoroughly explored, appellant will need the assistance of an attorney.

One final matter remains before us. Appellant urges that the parole condition that prohibited his entering Magoffin County was unconstitutional. This question is not ripe for review. *Compare,* Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed. 2d 681 (1967) and Toilet Goods Association v. Gardner, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967). Appellees have stated repeatedly, both at the hearing and in their brief, that the bases for revocation were absconding and leaving the district without permission, not for entering Magoffin County. Even if the Board were to decide after the hearing that appellant may remain on parole, we have no knowledge whether it would reimpose the contested restriction. Naturally, if the Board were to give as one of its reasons for revoking parole that appellant entered Magoffin County or if it were to reinstate the prohibition, the issue would mature into a justiciable controversy. Adjudication of the issue at the present time would be premature.

Being of the opinion that the district court erred in dismissing the amended complaint, its judgment of dismissal is vacated and the action is remanded for proceedings consistent with this opinion. Judgment should be entered declaring the rights and duties of the parties and requiring the Parole Board to accord appellant a revocation hearing in compli-

---

1. The automatic revocation of parole for every parole violation regardless of the mitigating circumstances clearly runs counter to the dictates of the Court in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L. Ed.2d 484 (1972). See Caton v. Smith, 486 F.2d 733, 735 (7th Cir. 1973).

ance with the standards and principles herein stated. Pending such hearing, the district court will retain jurisdiction of the case to consider, if necessary, any further claims for relief. The issue as to the validity of any conditions of parole imposed by the Board will be reserved for later consideration by the district court if it should become necessary.