UNITED STATES of America,
Plaintiff-Appellee,

v.

Rea Lyn SEGAL, Defendant-Appellant.

No. 75–3297.

United States Court of Appeals,
Ninth Circuit.

Feb. 2, 1977.

William M. Goodman, Asst. Federal Public Defender (argued), of San Francisco, Cal., for defendant-appellant.

Malcolm Stuart Segal, Asst. U.S. Atty. (argued), of San Francisco, Cal., for plaintiff-appellee.

Before BROWNING and WALLACE, Circuit Judges, and EAST,* District Judge.

WALLACE, Circuit Judge:

Segal pleaded guilty to the fraudulent use of a fictitious name and address in violation of 18 U.S.C. § 1342 and was placed on probation. The district court subsequently found that the terms of her probation had been violated, revoked probation and imposed a jail sentence to begin subsequent to a state sentence she was then serving. On appeal she raises two questions. She contends first that she was denied the protections guaranteed by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and Rule 11, Fed.R. Crim.P., which are claimed to apply to her probation revocation hearing and, second, that imposition of a sentence to run consecutive to a state sentence was an abuse of discretion. We affirm.

I

After Segal's guilty plea, sentencing was continued to allow preparation of a presentence report and to provide time for her to

---

* Honorable William G. East, United States District Judge, District of Oregon, sitting by designation.

work out an acceptable plan for making restitution to persons she defrauded. Segal experienced difficulty complying with her payment plan and, ten months later, appeared in district court with her attorney for a report. After she and her attorney offered mitigating arguments, the district judge suspended imposition of sentence and placed Segal on probation with various terms including that she make restitution in an amount and manner to be determined by her probation officer. The judge warned Segal several times during the hearing that if she failed to comply with the conditions of probation he would be forced to impose a tough prison sentence.

Nine months later, her probation officer filed a petition for revocation, alleging that Segal had violated the probation conditions by failing to make scheduled restitution payments, to submit monthly reports and to report an arrest (although the charges were dismissed). She was also charged with serving 30 days in jail for a state probation violation. The court held a hearing at which Segal was warned again that if she did not cooperate she would be quickly placed in prison. Her counsel requested and was granted a continuance in order to prepare evidence in mitigation of the alleged violations. Apparently the court later decided not to revoke probation.

A second petition for revocation of probation was filed 17 months later alleging that Segal failed to notify the probation officer of a change of address, to submit monthly reports and to pay restitution. A supplemental petition was filed seven months thereafter stating that Segal was convicted in a state court of forgery and sentenced to one year in a county jail, and also convicted by another state court on one count of forgery and one count of fraud, with a one-year sentence imposed to run concurrently with the prior state conviction.

A hearing was held on the two petitions with Segal and her counsel present. In response to the court's inquiry, Segal and her attorney acknowledged that they had discussed the charges. Segal then admitted four of the five charges, denying that she had failed to notify her probation officer of a change of address. Her counsel conceded that there was no point in contesting the four admitted violations and waived a hearing on the nonadmitted violation in light of the other admissions. The court viewed the admissions as having been made voluntarily and knowingly.

Segal and her attorney both argued in mitigation of the violations. The court, however, revoked probation and imposed a sentence of three years, to run consecutively to the sentences she was then serving in a county jail.

## II

The first question before us is whether Segal was entitled to the protections of *Boykin v. Alabama* and Rule 11 at the time her probation was revoked and sentence was imposed. She contends that she did not receive the benefit of these protections when she admitted violations of the terms of her probation.

The protections of *Boykin* and Rule 11 are designed to provide objective and easily reviewable evidence that guilty pleas have been made voluntarily and knowingly. In *Boykin*, the Supreme Court held that it was a violation of due process for a state trial court to accept a guilty plea without an affirmative showing that the plea was voluntary and intelligent. It was ruled impermissible to presume from a silent record the waivers of three rights forfeited by a guilty plea—the Sixth Amendment rights to a jury trial and to confront one's accusers, and the Fifth Amendment privilege against compulsory self-incrimination. 395 U.S. at 243, 89 S.Ct. 1709.

While not requiring a particular ritual, Rule 11 does provide instructions for federal courts in order to achieve a similar purpose. The district judge is required to address the defendant personally and determine that the plea is made voluntarily and with the understanding of the nature of the charges against him and the consequences of the plea. Failure to comply with Rule 11 entitles a federal defendant to have his guilty plea set aside and his case remanded

for another hearing at which he may plead anew. *McCarthy v. United States*, 394 U.S. 459, 468–72, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

■ Before analyzing the *Boykin* and Rule 11 claims, it is important to identify what Segal does not argue. She does not allege a *Boykin* or Rule 11 violation at the time she pleaded guilty. We presume, in the absence of a showing of plain error, that the district court followed the law. *See Davis v. United States*, 425 F.2d 673, 674 (9th Cir. 1970); Fed.R.Crim.P. 52(b). Although the plea-taking record is not before us, we may assume, in the absence of any contrary contention, that the record affirmatively shows that the guilty plea was voluntary and intelligent, *cf. United States v. Pricepaul*, 540 F.2d 417, 422–424 (9th Cir. 1976), and that Segal was fully advised of her rights as required by Rule 11. Finally, Segal does not argue that her guilty plea was involuntary or not intelligently entered. Thus we begin with the premise that the full panoply of rights to which Segal was entitled were properly provided to her at the time she pleaded guilty.

Though not specifically articulated, Segal's contention appears to be that in spite of a valid and unassailable plea of guilty with all the court and congressionally mandated trappings, when imposition of a sentence has been suspended and she has been admitted to probation, she is again entitled to the protections of *Boykin* and Rule 11 three years and eight months later when her probation is revoked and a sentence imposed. The government's answer is not that *Boykin* and Rule 11 were complied with when Segal admitted her probation violations, but that those protections are not required in a probation revocation hearing.

### III

■ The argument pertaining to Rule 11 is easily answered. By its terms, the court must advise a defendant "[b]efore accepting a plea of guilty." Fed.R.Crim.P. 11(c). It is the taking of the plea, not the imposition of sentence or the revocation of probation,

to which the rule is addressed. Indeed, the advisory committee notes make no reference to protection from an admission of wrongdoing outside the context of a plea of guilty to a criminal charge. If the Supreme Court and Congress wish to extend the application of Rule 11 to new areas, they are free to do so. But it would be officious meddling for a court of appeals to amend the rule. We decline to do so.

### IV

The more difficult question is whether *Boykin* safeguards apply at this stage. No decision of the Supreme Court or of our court has been cited to us nor have we found one which answers this precise question. However, from the authority reviewed, we believe a reasoned answer must be no.

### A

Although mute on the issue before us, the Supreme Court has provided some guidance in a number of decisions concerning what process is due in proceedings along a continuum starting with criminal prosecutions and ending with the correctional process. For purposes of our analysis, we differentiate among four types of proceedings where the Court has required differing levels of due process. In decending order of the amount of process which is due are: (1) criminal prosecutions, *e. g., Boykin v. Alabama, supra*; (2) probation revocation hearings with imposition of a sentence theretofore suspended, *e. g., Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); (3) probation revocation hearings with the sentence already established and parole revocation hearings, *e. g., Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); and (4) prison disciplinary proceedings, *e. g., Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). By analyzing what is required in a probation revocation setting, taking account of the additional

process due when a suspended sentence is imposed, we shall determine whether Segal's due process rights were infringed.

Morrissey v. Brewer, supra, articulated hearing requirements for parole revocation. The same rights were later extended to probationers in revocation proceedings:

> Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty. Accordingly, we hold that a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in Morrissey v. Brewer, supra.

Gagnon v. Scarpelli, supra, 411 U.S. at 782, 93 S.Ct. at 1759–1760 (footnotes omitted). Thus in order to revoke probation, there must be first a "preliminary hearing at the time of [the probationer's] arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his [probation], and [then] a somewhat more comprehensive hearing prior to the making of the final revocation decision." Id. The second hearing must include the following minimum requirements:

> (a) written notice of the claimed violations of [probation]; (b) disclosure to the [probationer] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body . . . ; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation].

Morrissey v. Brewer, supra, 408 U.S. at 489, 92 S.Ct. at 2604.[1] It should be emphasized that:

> [T]here is no thought to equate this second stage of [probation] revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

Id.

Segal does not claim that she was denied any of the rights described in Gagnon v. Scarpelli. The Court in that case did not refer to any additional rights to which Segal would be entitled in a revocation procedure.

Thus we come to the next question of what other rights are granted Segal because in addition to probation revocation, the court will for the first time impose a prison sentence. In Gagnon v. Scarpelli, supra, 411 U.S. at 781, 93 S.Ct. 1756, the Court distinguished the simple probation revocation situation before it from the combined revocational sentencing hearing involved in Mempa v. Rhay, supra. In Mempa, the Court held that when a deferred sentencing procedure is coupled with a probation revocation, "a lawyer must be afforded at this proceeding whether it be labeled a revocation of probation or a deferred sentencing." Mempa v. Rhay, supra, 389 U.S. at 137, 88 S.Ct. at 258. The sentencing aspect of the hearing was considered to be the determinative factor for purposes of finding a Sixth Amendment right to counsel, since sentencing was a "stage of a criminal proceeding where substantial rights of a criminal accused may be affected." Id. at 134, 88 S.Ct. at 257.

Of course, the requirements of Mempa were met here: Segal was represented by her lawyer. The question is whether any additional rights inure to her as a result of the deferred sentencing aspect of her hearing.

The closest we have come in answer to this question is United States v. Miller, 514 F.2d 41 (9th Cir. 1975). Miller had been

---

1. The other possible right to which a probationer may be entitled is that of counsel. Gagnon v. Scarpelli, supra, 411 U.S. at 787–91, 93 S.Ct. 1756. Whether Segal was so entitled under the Scarpelli test is not before us because she was in fact represented by counsel at the combined revocation and sentencing hearing, as required by Mempa v. Rhay, supra.

convicted of a felony. Imposition of his sentence was suspended and he was placed on probation. At a hearing where he was represented by counsel, probation was revoked and he was sentenced to prison. The issue on appeal pertained to hearsay objections to evidence of his violations of probation. We stated:

> The unrefuted evidence presented at the hearing by the government was reliable and obviously sufficient to satisfy the court that appellant had violated the terms of his probation. The Supreme Court in *Morrissey v. Brewer* and *Gagnon v. Scarpelli, supra*, emphasized that a parole or probation hearing is not to be equated with a criminal prosecution; that it is a narrow inquiry and that the process should be flexible enough to consider evidence including letters, affidavits and other material that would not be admissible in an adversary criminal trial.

*Id.* at 42–43. We then held:

> In the circumstances of this case, due process as prescribed in *Morrissey* and *Gagnon* was afforded appellant and he was in no way prejudiced as a result of the procedure employed at the revocation hearing.

*Id.* at 43. *See Sailer v. Gunn*, 548 F.2d 271 (9th Cir. 1977); *Pope v. Chew*, 521 F.2d 400 (4th Cir. 1975).

█ Thus it appears that except for Miller's *Mempa* right to counsel, we required no more in his combined probation revocation and sentencing hearing than the protections guaranteed by *Gagnon v. Scarpelli* where there was no deferred sentence to be imposed. It can therefore be inferred that we have limited the additional rights to be accorded when a deferred sentence is imposed to the right to counsel provided in *Mempa.*[2]

### B

█ Segal would have us extend the *Boykin* protections so that the record would show a voluntary and intelligent waiver of the rights she forfeited by admitting violation of the terms of her probation. But the *Boykin* rule is tailored to the defendant's entering a plea of guilty. It will not fit on a different mannequin. The Court in *Boykin* required an affirmative showing on the record that a plea of guilty was knowing and voluntary because the plea is itself a conviction, ending the controversy. 395 U.S. at 242, 89 S.Ct. 1709. But admissions of probation violations do not end the controversy. The judge must still decide the more difficult issue whether the violations warrant revocation of probation. This involves predictive and discretionary considerations in addition to factual inquiries. Moreover, the probationer is allowed to present evidence in mitigation of the violations. See *Morrissey v. Brewer, supra*, 408 U.S. at 480, 488, 92 S.Ct. 2593. Thus, admissions of probation violations, unlike guilty pleas, do not automatically trigger sentencing. To the extent that admissions are viewed as immediately preceding sentencing, it is only because a prior guilty plea has led to suspending the imposition of sentence.

In addition, it is questionable to what extent, if any, the three constitutional rights protected by *Boykin* are enjoyed by Segal at the revocation proceeding. While the deferred sentence aspect of her hearing makes it a criminal proceeding for the limited purpose of attaching a Sixth Amendment right to counsel, *Mempa v. Rhay, supra*, there is certainly no Sixth Amendment right to a jury trial that can be waived. *Gagnon v. Scarpelli, supra*. As to confrontation rights, it is unclear whether the limited right granted in *Gagnon v. Scarpelli* at a probation revocation hearing sprang directly from the Sixth Amendment confrontation clause or was an aspect of due process fundamental fairness. *Cf. Baxter v. Palmigiano, supra*, 425 U.S. at 322 n. 5, 96 S.Ct. at 1560 n. 5. If the hearing officer

---

2. We therefore reject the dictum in *United States ex rel. Spero v. Wenzel*, 397 F.Supp. 597, 604–06 (E.D.N.Y.1975), that the Sixth Amendment confrontation right applies to a deferred sentence probation revocation hearing and that hearsay may be excluded and witnesses cross-examined as of right.

can deny confrontation for good cause, then the confrontation right to be waived is not as significant as that to which a defendant at a criminal trial is entitled.

With respect to the third right protected by *Boykin*, the Court in *Gagnon v. Scarpelli* did not state what aspects of the Fifth Amendment privilege against self-incrimination are required by due process at revocation proceedings. The privilege applies when a defendant is compelled to be a witness against himself in his own criminal prosecution or when he is called on to testify in any type of proceeding to answer questions which might serve to incriminate him in any future criminal prosecution. *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). While on the one hand a probation revocation proceeding, with or without the imposition of sentence, is not part of a criminal prosecution for purpose of the privilege, see *id.; Gagnon v. Scarpelli, supra*, 411 U.S. at 782, 93 S.Ct. 1756, there are other limitations on the use of incriminating statements; for example, it would be a due process violation to use unreliable, coerced admissions. *See Spano v. New York*, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959).

It appears, on the other hand, that the second aspect of the privilege, the ban on inducement of statements that might incriminate one in future criminal prosecutions, is applicable in a probation revocation proceeding although possibly not in its full rigor. For example, the Court has permitted some penalty to be exacted for the exercise of the right to be silent in prison disciplinary hearings. In *Baxter v. Palmigiano, supra*, it was held that a negative, though not conclusive, inference can be drawn from the failure of a prisoner to testify in opposition to claimed misconduct even though the testimony if given could lead to criminal prosecution. 425 U.S. at 316–319, 96 S.Ct. 1551. The Court distinguished cases prohibiting the automatic imposition of civil penalties for refusing to submit to interrogation in noncriminal proceedings and to waive the privilege without a grant of immunity. *See Lefkowitz v. Turley, supra; Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). The court in *Baxter* also noted that the correctional proceeding involved important state interests other than conviction for crime. 425 U.S. at 320–322, 96 S.Ct. 1551.

That at the due process level just below probation revocation there is a diminished application of the Fifth Amendment privilege at least leaves open the question whether the privilege should also have lesser force than at the time of the plea of guilty,[3] when there are likewise important interests besides conviction for crime.

Thus, if at her probation revocation hearing, Segal has at best an attenuated confrontation right, a limited self-incrimination privilege and no right to jury trial, the theoretical justifications for *Boykin* do not manifest themselves to a significant degree at this stage. Due process precedents, therefore, do not support her argument for the applicability of *Boykin*-like protections.

C

Segal further contends that the admission of probation violations is the equivalent of a plea of guilty and that therefore *Boykin* applies, citing *Sesser v. Gunn*, 529 F.2d 932 (9th Cir. 1976). There, we reaffirmed our

---

**3.** The sentencing aspect of Segal's hearing does not call for recognizing a broader witness privilege. For example, in *Gollaher v. United States*, 419 F.2d 520, 529–30 (9th Cir.), *cert. denied*, 396 U.S. 960, 90 S.Ct. 434, 24 L.Ed.2d 424 (1969), we held that a sentencing court could impose a harsh sentence as a penalty for the defendant's refusal to admit his guilt, since an admission would evidence the first step in rehabilitation. *Contra, United States v. Laca,* 499 F.2d 922, 927–28 (5th Cir. 1974) (self-incrimination violated because of the possibility that the conviction might be set aside only to have the admissions at sentencing used in a subsequent proceeding); *Bertrand v. United States*, 467 F.2d 901 (5th Cir. 1972). *See also United States v. Vermeulen*, 436 F.2d 72, 76–77 (2d Cir. 1970), *cert. denied*, 402 U.S. 911, 91 S.Ct. 1390, 28 L.Ed.2d 653 (1971).

earlier holding in *Wright v. Craven*, 461 F.2d 1109 (9th Cir. 1972), to the effect that *Boykin* applies to the admission of prior convictions used to classify a defendant as an habitual criminal, thereby subjecting him to a life imprisonment sentence, since the admissions were functionally equivalent to a guilty plea. In *Wright* we incorporated the reasoning set out by the district court, 325 F.Supp. 1253 (N.D.Cal.1971). *Cf. Womack v. Craven*, 431 F.2d 1191 (9th Cir. 1970) (dictum). While conceding that some have called a finding of recidivism an adjudication of status and not of guilt as to a separate offense, the district court emphasized the drastic consequence of a mandatory life sentence. The court noted that a defendant prosecuted under a recidivist statute has a constitutional right to a judicial hearing on the validity of the prior convictions, with a right to notice of the charges and assistance of counsel. 325 F.Supp. at 1256; *Chandler v. Fretag*, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (1954).

█ Segal's admissions, however, were not made in the course of a criminal trial and do not give rise to a different statutory offense or to an increase in punishment on the underlying conviction. She is subject to the same maximum punishment of which she presumably was apprised before pleading guilty in the district court. Thus there is no equivalent drastic consequence. Therefore, we hold that the making of admissions at a probation revocation proceeding, even when sentence is subsequently imposed, is not the equivalent of a guilty plea, functional or otherwise.

### D

Finally, not only do precedents not require that *Boykin* apply at deferred sentence probation revocation hearings, we believe such an extension would be inappropriate. At the time a sentence is imposed, there is a definite, clean-cut adversary system in process; the battle lines are drawn—the prosecution and the defense endeavoring to assert a well-reasoned position victoriously. True, there is often some spirit of compromise involved, resulting in a bargain which leads to the plea. But still the defendant is wary—his attorney, required to be present, is on guard.

But after the plea—the confession of guilt and admitted readiness to accept whatever sentence is imposed—and after the court allows the defendant the liberty to remain outside of jail though conditioned on specific terms of probation, a new relationship begins. The prosecutor is dismissed from the battlefield. The defense attorney, though on call, is no longer a permanent fixture. The new relationship is between court and probationer. It is based upon an implied agreement that the judge has decided not to impress a jail sentence in return for a stated course of conduct.

While time restraints do not allow the judge to monitor and assist the probationer with his promised conduct, the probation officer becomes an arm of the court to do so. The probation officer, in carrying out his duty, will always be aware of his basic purpose:

> While the parole or probation officer recognizes his double duty to the welfare of his clients and to the safety of the general community, by and large concern for the client dominates his professional attitude. The parole agent ordinarily defines his role as representing his client's best interests as long as these do not constitute a threat to public safety.

*Gagnon v. Scarpelli, supra,* 411 U.S. at 783–84, 93 S.Ct. at 1760 (quoting F. Remington, et al., Criminal Justice Administration, Materials and Cases 910–11 (1969)); *see United States ex rel. Sperling v. Fitzpatrick,* 426 F.2d 1161, 1164 (2d Cir. 1970) (Lumbard, J., concurring). This function can best be carried out in a less adversary and contentious atmosphere. There should be openness leading, where possible, to cooperation in accomplishing the goals of probation. *See Gagnon v. Scarpelli, supra,* 411 U.S. at 785, 93 S.Ct. 1756.

█ When, in spite of efforts to encourage compliance, a probation officer decides that a probationer's conduct should be brought to the attention of the court, the court-probationer relationship remains es-

sentially the same. The judge will consider whether there was an infraction, but nevertheless may well continue the probation (as was done here twice) or modify the terms. To superimpose formalistic procedures upon this hearing is neither required by due process nor necessarily conducive to a more effective accomplishment of the goals of probation. Indeed, probation revocation procedures should be as flexible and as capable of meeting the needs of the situation involved as parole revocation proceedings. *See Morrissey v. Brewer, supra,* 408 U.S. at 490, 92 S.Ct. 2593.

The *Boykin* protections having been provided at the time of the plea and prior to the initiation of the probation relationship, there is no due process requirement to provide those protections at each probation revocation hearing. Indeed, if we so held, the next logical step would be to require similar formalities at each interview with the probation officer because information received there could be used at a subsequent hearing. *Cf. United States v. Consuelo-Gonzalez,* 521 F.2d 259 (9th Cir. 1975). Such a result would not only be unnecessary to protect probationers' rights but would militate against the type of probation officer-probationer relationship which can best effectuate rehabilitation.[4]

### V

We next turn to Segal's second complaint: that the imposition of her sentence to begin after serving her state sentence

was an abuse of discretion. At the time of sentencing, Segal had served seven months of a 12-month state sentence. The district judge revoked probation and sentenced her to three years in prison to commence after the jail term on the state charges had expired. Segal objects to this, contending that it constitutes a consecutive sentence.

Segal does not contend that some type of prior warning should have been given as to this eventuality. Indeed, if any such warning were required it would have properly been given at the time of her guilty plea. *See United States v. Myers,* 451 F.2d 402 (9th Cir. 1972).[5]

The simple answer to Segal's contention is that the district judge has no authority to impose a federal sentence concurrent with a state sentence because a federal term cannot begin until a prisoner has been received by federal authorities. 18 U.S.C. § 3568. Necessarily, imposition of the sentence to commence subsequent to the state imprisonment when Segal can be received by federal authorities is not an abuse of discretion.

AFFIRMED.

BROWNING, Circuit Judge, dissenting:

The significant issue on this appeal is whether the record must show appellant's awareness of the substantial rights she would waive by admitting she had violated the conditions of her probation. It is difficult to understand why the majority labors with such obvious difficulty to find a basis

---

4. Since we conclude that Segal is not entitled to a *Boykin*-type rule for her deferred sentence probation revocation hearing, we do not follow the implications of *Preston v. Piggman,* 496 F.2d 270 (6th Cir. 1974). There, the court refused to presume a waiver of a parolee's constitutional right to present mitigating evidence from a silent record, citing *Boykin. Id.* at 274. To the extent that case conflicts with our opinion, we respectfully decline to accept its holding.

5. *Myers* held that Rule 11 requires that a defendant in state custody awaiting trial on state charges be made aware of the consequence of 18 U.S.C. § 3568 before entering a guilty plea in federal court. 451 F.2d at 404-05. Section 3568 forbids any sentence that might be im-

posed by the district judge from beginning to run prior to the time the defendant is received in federal custody. However, we cannot determine whether *Myers* could even apply here, because the record is unclear as to whether Segal faced any state charges at the time of the original plea. Indeed, even if we held *Myers* could apply at the time of a probation revocation and imposition of sentence, it would not necessarily be applicable here where Segal was already serving a state prison term. *See Faulisi v. Daggett,* 527 F.2d 305, 307-09 (7th Cir. 1975) (distinguishing *Myers* and following *Hinds v. United States,* 429 F.2d 1322 (9th Cir. 1970)); *Tindall v. United States,* 469 F.2d 92 (5th Cir. 1972); *cf. Williams v. United States,* 500 F.2d 42, 44 (10th Cir. 1974).

for denying appellant a procedural protection so effective and so easily afforded.

Because revocation of probation deprives the defendant of a liberty interest protected by the Fifth and Fourteenth Amendments, probation may be revoked consistently with the Constitution only by due process of law. *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The "minimum requirements of due process" to which a probationer is entitled include (1) notice of the charges, (2) disclosure of the adverse evidence, (3) an opportunity to be heard and present evidence, (4) an opportunity to confront and cross-examine witnesses, absent a finding of good cause not to allow it, (5) a neutral and detached tribunal, and (6) a written statement of the reasons for revocation and the evidence relied on. *Id.* at 786, 93 S.Ct. 1756.

Appellant, the majority states "does not claim that she was denied any of the rights described in *Gagnon v. Scarpelli*." That is true, but irrelevant. What appellant does claim is that by admitting the alleged violations of the conditions of her probation she lost the benefit of most of these rights, and that the record does not disclose she did so knowingly. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), requires that the waiver of rights implicit in a guilty plea appear on the face of the record. The reason for this requirement is that the rights involved are significant and the consequence of their waiver is grave. The rights waived by admitting a violation of the conditions of probation are equally significant, and the result that may follow is the very same loss of liberty to which the defendant is exposed by a guilty plea.

The reasons advanced by the majority for distinguishing the two situations are without substance. The majority argues that a guilty plea "ends the controversy," while the issue of whether to revoke probation remains open after an admission that conditions of probation have been violated. "Thus, admissions of probation violations, unlike guilty pleas," the majority asserts, "do not automatically trigger sentencing." If there is a distinction here, it is one without significance. Both the guilty plea and the admission of probation violations end any inquiry into whether the alleged acts have been committed, but leave open the question of punishment. The identical issue remains after a guilty plea and after an admission of probation violation, namely, what action should be taken with respect to the defendant that will best serve society's interests. A guilty plea and an admission of a probation violation thus expose a defendant to exactly the same punishment in exactly the same way. To say, as the majority does, that "there is no equivalent drastic consequence" from admission of a probation violation is inaccurate. Indeed, the consequences may be more drastic—as in this case. Appellant's guilty plea resulted in probation and deferment of sentencing but her admission of probation violations resulted in a three-year prison sentence.

The majority's elaborate discussion of the precise extent to which three rights waived by a guilty plea—the rights to jury trial, to confrontation and cross-examination of witnesses, and to be free of compelled self-incrimination—are available to a probationer is also beside the point. A probationer faced with revocation unquestionably has the rights spelled out in *Gagnon v. Scarpelli*. They may be different from the rights available to the accused when he is called upon to plead to the original charge, but they are no less important. In both situations the rights waived afford the defendant his primary protection against an unfair deprivation of liberty. The majority seizes upon the fact that before appellant pleaded guilty she was presumably advised of the rights she waived by that plea. But it can hardly be argued from this that appellant was aware of the additional and different rights she waived when she admitted the violations of the conditions of her probation.

Curiously, the majority suggests that informing a probationer of his rights before he foregoes them will poison the relationship between the probationer and the court. It is far more likely that this simple demon-

stration of fairness will encourage the probationer to accept the court as a just tribunal. The nondisclosure rule adopted by the majority is hardly consistent with the "openness leading, where possible, to cooperation in accomplishing the goals of probation," that the majority properly extols. The Supreme Court rejected an argument similar to that made by the majority in applying extensive due process protections to parole revocation proceedings. *See Morrissey v. Brewer*, 408 U.S. 471, 475, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

There is no basis for the majority's concluding argument that if *Boykin* applies to the probation revocation hearing it must also apply "at each interview with the probation officer." What is at stake here is the obligation to inform the probationer of the rights accorded by *Gagnon v. Scarpelli*. Those rights do not apply at probation interviews, and neither would the obligation to inform the probationer.

The only substantial question is whether waiver on the record should be required at all probation revocation proceedings where violations are admitted, or only selectively. Failure to inform a probationer of his rights at a revocation hearing may result in a serious injustice, *see, e. g., Preston v. Piggman*, 496 F.2d 270 (6th Cir. 1974), but perhaps not in every case. Clearly the appellant had notice of the charges against her, and would not have been likely to adopt a different course if she had been informed on the record of the rights she was waiving. Since the claimed violations included two readily provable convictions, her right to put the government to its proof and her right to offer evidence on her own behalf were probably not of great practical value. The Supreme Court's holding in *Gagnon v. Scarpelli*, conditioning the right to counsel in a probation revocation hearing upon the need for counsel's assistance in the circumstances of the particular case, might suggest a similar case-by-case application of the waiver requirement.

However, the result in *Gagnon v. Scarpelli* rested upon considerations not present here. The Court concluded that the intro-duction of counsel might significantly alter the informal atmosphere of probation revocation proceedings and that the enormous cost of providing counsel in every such proceeding outweighed the risk that counsel would be erroneously denied if the decision were made on a case-by-case basis. 411 U.S. at 787–88, 93 S.Ct. 1756. Here the balance is quite different. A simple enumeration on the record of the rights guaranteed by *Gagnon v. Scarpelli* will not significantly alter the nature of the proceeding, and the time and effort required to provide the probationer with this information is minimal. For these reasons it is pointless to run the risk that an uninformed and unjustified admission of violation may occur, resulting in the interruption of a successful effort at rehabilitation and an unwarranted deprivation of probationer's liberty.