IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. SWARTZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ANTHONEY SWARTZ, APPELLANT.

Filed July 23, 2024.    No. A-24-085.

Appeal from the District Court for Hall County: ANDREW C. BUTLER, Judge. Affirmed.

Christopher A. Hays, Deputy Hall County Public Defender, for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

PIRTLE, Chief Judge, and RIEDMANN and BISHOP, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

In 2018, Anthoney Swartz was convicted of first degree sexual assault by the district court for Hall County. As part of his sentence, he was placed on probation for a period of 60 months. While on probation, he committed another sexual assault and was eventually sentenced to 25 to 30 years' imprisonment by the district court for Hamilton County.

Due to Swartz' new sexual assault charge and conviction, the State motioned to revoke his Hall County probation. Swartz admitted to this probation violation in exchange for the State recommending that any sentence be concurrent to the one he received in the Hamilton County proceedings. He was then resentenced on his 2018 conviction and sentenced to 30 to 40 years' imprisonment to run consecutively to the 25 to 30 years he was set to serve out of Hamilton County.

- 1 -

Swartz now appeals asserting the district court should have warned him it did not have to follow the State's recommendation and that it abused its discretion by imposing an excessive sentence. For the reasons that follow, we affirm.

BACKGROUND

On May 15, 2018, Swartz, then 21 years old, was sentenced in Hall County on one count of first degree sexual assault, a Class II felony. This conviction stemmed from a sexual relationship he had with a 13-year-old female when he was 19 years old. Related to this conviction, the district court sentenced him to a term of 180 days' incarceration and 60 months' probation.

While on probation, Swartz proved to be generally uncooperative. He refused to participate in required classes, objected to taking drug tests, argued with his probation officer about completing the conditions of his probation, continually missed therapy sessions, and stopped attending therapy in June 2021. Additionally, because Swartz impregnated the 13-year-old victim, he complained about having to pay child support and claimed that he was the actual victim.

On September 26, 2022, while Swartz was still on probation in Hall County, a criminal complaint was filed against him in Hamilton County alleging that he committed another sexual assault. The circumstances of this allegation were that on July 5, 2021, Swartz sexually assaulted his fiancé's 17-year-old female cousin who was sleeping over. The victim reported that Swartz got on top of her while she was sleeping and asked if he could "do stuff," which she refused. She stated that she attempted to push Swartz off, but he started touching her and eventually penetrated her. Swartz initially denied these allegations, but later stated that he was "black out drunk" at a party and woke up in the same bed as the victim.

As a result of these new charges and because a condition of Swartz' probation was to not violate any laws, on December 7, 2022, a motion was filed in Hall County to revoke his probation. On November 15, 2023, Swartz was convicted of first degree sexual assault and first degree false imprisonment in Hamilton County. He was ultimately sentenced to 25 to 30 years' imprisonment on these convictions.

On November 29, 2023, following the Hamilton County convictions, the State filed an amended motion for revocation of probation in Hall County to reflect that Swartz was convicted of the crimes charged. Swartz thereafter accepted a plea agreement offered by the State where he would admit to the allegations within the amended motion and the State would recommend that any sentence related to the revocation of probation be set to run concurrently with the sentence imposed in the Hamilton County proceedings.

On December 6, 2023, at the hearing on the State's motion to revoke Swartz' probation, Swartz admitted to violating a condition of his probation by violating the law. The court received a certified copy of the Hamilton County proceedings as a factual basis for the admission, indicated it would use the presentence investigation report (PSI) from those proceedings, and set a sentencing date.

On February 2, 2024, the district court resentenced Swartz on his 2018 conviction for first degree sexual assault. Before pronouncing its sentence, the court stated:

> Mr. Swartz, you're still a young individual, and you have multiple dependents that you're responsible to take care of. However, you continue to get yourself in trouble, specifically the sexual allegations and now convictions.

Looking at the update[d] letter from [the probation officer], you know, at first – I don't know how long you were on your probation. You objected to all classes. I think the statement was you already knew everything you needed to know, and you did not want anyone else telling you what to do.

You objected to reporting for drug testing. For a while you went to outpatient counseling, but you attended sporadically. At the time of this event, you were 19 and the victim in this case was 13. You denied all the allegations until a DNA result showed you were the father of this child. You have a negative attitude towards women, and you stopped therapy completely in June of 2021.

That is not really a good showing while on probation. And while on probation, then you end up with a second sexual assault conviction that you ended up getting a 25-to-30-year sentence on. And I believe [] that's a mandatory minimum 25-year sentence . . . [s]o on that, you will serve a full 25 years out of Hamilton County.

Mr. Swartz, I don't know what led to the original sentence of probation in this case. I think you were given an opportunity, a gift, however you want to say it, and you did not take advantage of that and you continued to violate the law.

. . . Mr. Swartz, this Court cannot find you're a suitable candidate for probation. This Court is revoking your current term of probation. The reasons you can't be supervised on probation are you have failed to comply with prior terms of probation in this case. A lesser sentence would depreciate the seriousness of the crime. A lesser sentence would promote disrespect for the law. Incarceration is necessary to protect the security of the public. The risk is substantial that during a period of probation you would engage in additional criminal conduct. The crime caused or threatened to cause serious harm. There is no reason to excuse or justify the offense. The Court cannot find your character and attitude indicates you are unlikely to commit another crime. And you are currently incarcerated or will be shortly based out of Hamilton County in the Nebraska Department of Corrections.

The district court sentenced Swartz to 30 to 40 years' imprisonment and ordered this sentence to run consecutively to his sentence out of Hamilton County. In explaining why it chose to impose a consecutive sentence, the court stated: "These are two separate events. These are two events that happened with young individuals that you took advantage of, so the Court is making these sentences consecutive." Swartz now appeals.

## ASSIGNMENTS OF ERROR

Restated, Swartz assigns the district court erred (1) by not informing him that the court did not have to follow the State's sentencing recommendation when it accepted his admission plea and (2) by imposing an excessive sentence.

## STANDARD OF REVIEW

An appellate court reviews a decision to revoke probation, and a sentence imposed within statutory limits, for abuse of discretion. *State v. Horne*, 315 Neb. 766, 1 N.W.3d 457 (2024).

ANALYSIS

*Lack of Warning About Potential Consecutive Sentence.*

Swartz first assigns the district court erred by not informing him that it did not have to follow the State's sentencing recommendation. He argues that without this warning, he could not have been expected to understand that a consequence of his admission could potentially involve a consecutive sentence.

A motion to revoke probation is not a criminal proceeding. *State v. Galvan*, 305 Neb. 513, 941 N.W.2d 183 (2020), *modified on denial of rehearing* 306 Neb. 498, 945 N.W.2d 888. A probation revocation hearing is considered a continuation of the original prosecution for which probation was imposed—in which the purpose is to determine whether a defendant has breached a condition of his or her existing probation, not to convict that individual of a new offense. *Id.* Therefore, probationers admitting to violations are not afforded the same constitutional protections as criminal defendants entering a guilty or no contest plea. See *State v. Johnson*, 287 Neb. 190, 842 N.W.2d 63 (2014).

In *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), the U.S. Supreme Court held that it was error for a state trial court to accept a guilty plea without an affirmative showing that the plea was made voluntarily and intelligently. The Court concluded that it is impermissible to assume from a silent record that a defendant waived their right to a jury, the right to confront their accusers, and the privilege against compulsory self-incrimination. *Id.* See, also, *State v. Mead*, 313 Neb. 892, 987 N.W.2d 271 (2023); *State v. Hamm*, 314 Neb. 311, 989 N.W.2d 719 (2023). However, the U.S. Supreme Court later held that probationers are not entitled to the same protections. See, *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973).

In subsequent decisions, many courts have continually found that probationers admitting probation violations are not entitled to the *Boykin* protections or other warnings afforded to criminal defendants under their respective rules of criminal procedure. In *United States v. Segal*, 549 F.2d 1293 (9th Cir. 1977), the leading federal case on the issue, the Ninth Circuit held that the safeguards of *Boykin v. Alabama, supra*, and Rule 11 of the Federal Rules of Criminal Procedure that mutually require the trial court to ensure a guilty plea has been made intelligently and voluntarily do not apply to probation revocation proceedings. The Court reasoned that "the making of admissions at a probation revocation proceeding . . . is not the equivalent of a guilty plea, functional or otherwise." *United States v. Segal*, 549 F.2d at 1300. The court explained that admissions are "not made in the course of a criminal trial and do not give rise to a different statutory offense or to an increase in punishment on the underlying conviction." *Id.* As such, probationers have no right to a jury trial, an attenuated right to confront witnesses, and only a limited privilege against self-incrimination. *Id.* Therefore, the court concluded that "the theoretical justifications for *Boykin* do not manifest themselves" at probation revocation proceedings. *Id.* at 1299.

Since the Ninth Circuit's holding in *Segal*, multiple other courts have come to analogous conclusions. *U.S. v. Correa-Torres*, 326 F.3d 18, 23 (1st Cir. 2003) (holding probation revocation proceedings do not require "formal colloquy of the depth and the intensity" as criminal proceedings); *U.S. v. Pelensky*, 129 F.3d 63, 68 (2d Cir. 1997) ("due process of law does not require court to elicit formal waiver from defendant who has admitted to violating terms of

probation"); *United States v. Stehl*, 665 F.2d 58 (4th Cir. 1981) (finding Fed. R. Crim. P. 11 only applies to taking of guilty plea, not to revoking probation); *U.S. v. LeBlanc*, 175 F.3d 511 (7th Cir. 1999) (agreeing that revocation hearing need not contain all of procedural protections required by Fed. R. Crim. P. 11); *U.S. v. Rapert*, 813 F.2d 182 (8th Cir. 1987) (adopting reasoning of Ninth Circuit in *United States v. Segal, supra*); *U.S. v. Barefoot*, 342 Fed. Appx. 480 (11th Cir. 2009) (finding lower court did not have to warn probationer that it could impose consecutive sentences); *State v. Jones*, 128 Ariz. 378, 625 P.2d 967 (Ariz. App. 1981) (it was unnecessary for trial court to advise probationer of mandatory minimum term on underlying conviction at time he entered his admission of violation of terms of his probation); *Howlett v. State*, 295 Md. 419, 456 A.2d 375 (1983) (finding Maryland's equivalent of Rule 11 is not applicable in probation revocation hearing); *People v. Hardin*, 70 Mich. App. 204, 206, 245 N.W.2d 566, 568 (1976) (holding that person admitting probation violation is not entitled to "the full panoply of rights set out in . . . the 'guilty plea' rule").

This leaves us in a position where Swartz is asserting that he was entitled to a protection not even afforded to criminal defendants. After a thorough review of relevant case law, we could find no authority supporting the assertion that probationers are entitled to a warning that the sentencing judge is not bound by the State's sentencing recommendation before it accepts an admission to a probation violation. In contrast, the above cited cases provide substantial authority to indicate that probationers are not entitled to such a warning.

Based on this overwhelming precedent, we are unable to impose an obligation that trial courts warn probationers that they are not bound by the parties' plea agreement or the State's sentencing recommendations. A warning of this nature is not afforded to criminal defendants who are protected by the full range of constitutional rights. *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). See *State v. Mead*, 313 Neb. 892, 987 N.W.2d 271 (2023) (reiterating the questions that trial courts must ask criminal defendants before accepting no contest or guilty plea). Accordingly, it would be misplaced to require this notice for probationers who are entitled to fewer protections. Therefore, we conclude Swartz' assignment of error that the sentencing judge should have affirmatively warned him that he was not bound by the State's sentencing recommendation fails.

*Excessive Sentence.*

Swartz next assigns the district court abused its discretion by imposing an excessive sentence. Specifically, he argues the court abused its discretion by sentencing him to a term of 30 to 40 years' incarceration and by making that sentence consecutive to the 25 to 30 years he was ordered to serve from his Hamilton County convictions.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Roth*, 311 Neb. 1007, 977 N.W.2d 221 (2022). However, it is not necessary for a sentencing court to articulate on the record that it has considered each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given to them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021).

Swartz was convicted of first degree sexual assault, a Class II felony. Class II felonies are punishable by a minimum of 1 year's imprisonment and a maximum of 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). Accordingly, the district court's sentence of 30 to 40 years' imprisonment was within the appropriate statutory range.

When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Roth, supra*. A judicial abuse of discretion exists only when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*. Generally, it is within a trial court's discretion to direct that sentences imposed for separate crimes be served either concurrently or consecutively. *State v. Leahy*, 301 Neb. 228, 917 N.W.2d 895 (2018).

We determine the district court did not abuse its discretion in sentencing Swartz to 30 to 40 years' incarceration to run consecutively to the 25 to 30 years of incarceration he was ordered to serve out of Hamilton County.

While Swartz' criminal record is relatively short, it is nonetheless serious. He was convicted of minor in possession in 2017, first degree sexual assault in 2018, and first degree sexual assault and first degree false imprisonment in 2023. As discussed, following his conviction in 2018, he was placed on probation. As part of his probation, he was instructed to complete five classes: Building Social Networks, Dialectical Behavior Therapy, Men's Group, Relapse Prevention Group, and Family Ties. His probation officer reported that from the beginning of his supervision, Swartz objected to completing any of these classes. While he sporadically participated in therapy throughout 2018, his therapist reported that he was "disengaged, defensive, easily angered, and carried deep resentments." His therapist further reported that "he had no interest in making changes, blamed the 13-year-old victim for his circumstances, and saw himself as the actual victim."

Upon Swartz seeing a different therapist in 2019, the new therapist reported Swartz was still resistant, irritable, and lacked insight into how an underage female was not able to consent to sexual contact. While Swartz eventually began displaying signs of improvement in 2019, it did not last as he cancelled appointments and failed to show up for counseling. Then in June 2021, he stopped attending therapy altogether. Around this time, he was enrolled in a class titled Sex Offender Specific Crime Victim Empathy but failed to attend. He also failed to attend several other classes citing conflicts with his work schedule.

Following his arrest in 2022, Swartz participated in and completed several classes, including the Sex Offender Specific Crime Victim Empathy class, a Relapse Prevention Group, and a Responsible Thinking course. He also began to attend AA meetings.

Utilizing the Level of Service/Case Management Inventory, the PSI reported that Swartz was at a "High" risk to recidivate. Within this index, he scored as a "High" risk in the leisure/recreation, companions, and anti-social pattern categories. He also scored as a "Medium" risk in the criminal history, education/employment, family/marital, alcohol/drug problems, and procriminal attitude categories.

Swartz was also administered the Vermont Assessment for Sex Offender Risk which is designed to assess the risk posed by adult males who have been convicted of at least one qualifying

sex offense. Swartz scored in the "High Risk" range on this instrument. The report indicated that his high score was related to his "Age, Prior Sex Offense, Prior Sentencing Dates, Violations of Probation, Relationship to Victim, Offense-Related Sexual, Employment and Treatment History."

Swartz was also assessed using the Sex Offender Treatment Intervention and Progress Scale which is designed to assess the risk, treatment needs, supervision needs, and progress among adult male sex offenders. This assessment considered Swartz to be a "High Risk." He was categorized in the "very considerable need for improvement range" on the scales of "Sexual Offense Responsibility, Sexual Behavior, Sexual Attitudes and Stage of Change." Additionally, he was in the "considerable need for improvement range" on the scales of "Criminal and Rule - Breaking Behavior/Attitudes, Cooperation with Treatment and Problem Solving." He was also assessed to be in the "need for improvement range" on the scales of "Sexual Interests, Cooperation with Community Supervision, Emotional Management, Impulsivity and Social Influences." These scores together with the results of his Vermont Assessment for Sex Offender Risk categorized him as a "High" risk to recidivate. The PSI reported that individuals in this risk category have an estimated sexual recidivism rate of 16.5 percent and an estimated violent recidivism rate of 23.3 percent in a 3-year period.

In addition to the information contained in the PSI, we also note the circumstances of Swartz' conviction in this matter. He was originally convicted of first degree sexual assault for having a sexual relationship with a 13-year-old girl, whom he impregnated, when he was 19 years old. Despite being given a chance to rehabilitate himself by being placed on probation, he not only proved to be generally uncooperative with the requirements of his probation, but also recidivated by sexually assaulting another young woman. Considering Swartz' criminal history, risk of recidivism, and that he has now sexually assaulted two young girls, we do not believe the district court abused its discretion in sentencing him to 30 to 40 years' imprisonment to run consecutively to the 25 to 30 year period of incarceration from Hamilton County.

CONCLUSION

We conclude the district court did not have an obligation to inform Swartz that it did not have to follow the State's sentencing recommendation. We also determine the district court did not abuse its discretion by sentencing Swartz to 30 to 40 years' imprisonment and ordering that period to be served consecutively to his sentence of 25 to 30 years out of Hamilton County.

AFFIRMED.