Ernest Eugene ATKINS, Petitioner,

v.

Ronald C. MARSHALL, Supt.,
Respondent.

No. C–1–81–556.

United States District Court,
S. D. Ohio, W. D.

March 15, 1982.

Ernest Eugene Atkins, pro se.

Dain N. Deveny, Asst. Atty. Gen., Columbus, Ohio, for defendants.

## OPINION

SPIEGEL, District Judge:

Petitioner, a state prisoner, brings this action for a writ of habeas corpus under the provisions of 28 U.S.C. § 2254. This matter is before this Court on the petition and the return of writ.

Petitioner was indicted in January, 1968 for second degree murder. Petitioner was found guilty of manslaughter and on April 10, 1969 the Common Pleas Court of Richland County, Ohio in *State v. Atkins*, No. 7058 (1969) sentenced petitioner to one to

twenty years. Petitioner was paroled in November, 1977, after serving ten years and two months of his sentence.

On January 21, 1978, petitioner was arrested in Mansfield, Ohio and charged with aggravated robbery. Shortly thereafter, the Adult Parole Authority (APA) lodged a detainer against petitioner claiming he had violated his conditions of parole. An "on-sight" or "probable cause" hearing was conducted on February 17, 1978 in the Richland County Jail and the following charges were levied:

> By violating Parole Agreement # 7-Special Condition # 1, which reads, "You will not change residence without written permission of your parole officer." To-wit: by changing your approved residence on or about 1/8/78. 2. By violating Parole Agreement # 3 which states, "Obey all municipal ordinances, state and federal laws, and at all times conduct yourself as a responsible law-abiding citizen." To-wit: by taking money by force, belonging to Johnny's Rib House, 157 E. Second Street, Mansfield, Ohio, on or about 1/21/78. 3. By violating Parole Agreement # 4 which reads "Never purchase, own, possess, use or have under your control, a deadly weapon or firearm." To-wit: by having in your possession a firearm on or about 1/21/78.

Petitioner was charged with Aggravated Robbery and Conspiracy, in violation of Ohio Revised Code §§ 2911.02 and 2923.01, respectively, in Richland County Court of Common Pleas, Case No. 7499. The first charge was dismissed by the State and a jury acquitted petitioner of the conspiracy charge on April 14, 1978.

During this time, because the APA had lodged a detainer against him, petitioner remained in jail awaiting the outcome of his final revocation hearing. One June 5, 1978, the APA conducted a "formal" revocation hearing as required by APA Regulation 5120:1-1-19 on the charges it had previously levied against petitioner. At the hearing petitioner was represented by counsel and was given the opportunity to present evidence on his own behalf. At the conclusion of the hearing the Parole Board found petitioner in violation of his conditions of parole in the following manner: Count (1) guilty; count (2) found innocent on the charge as it was written (robbery) but instead found guilty of conspiracy to rob; count (3) dismissed on motion of the State. The stipulation of facts to the Court of Appeals, (A. 48), indicates Count 3 was dismissed on motion of the State; the findings of the revocation hearing, (A. 64), suggest that the petitioner was found not guilty of Count 3 because the "firearm" was a cap pistol and not a firearm *per se.*

Petitioner was informed as to these findings in a document dated June 5, 1978. (A. 64). Petitioner, alleging constitutional due process violations in his parole revocation hearing, filed an action in mandamus in the Ohio Court of Appeals. The Court of Appeals denied relief in December, 1979. *State of Ohio ex rel. Atkins v. Denton*, No. 79AP–450 (Ohio App. 10th Dist.1979).

Atkins appealed to the Supreme Court of Ohio which affirmed the Court of Appeals decision on July 16, 1980 in *State of Ohio ex rel. Atkins v. Denton, Dir. et al,* 63 Ohio St.2d 192, 406 N.E.2d 1390 (1980). Petitioner then filed this petition for writ of habeas corpus.

There is no dispute that petitioner has alleged that he is in custody in violation of constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Nor is there any dispute that petitioner has exhausted his state remedies as required by 28 U.S.C. § 2254(b).

Petitioner contends that the minimum constitutional due process requirements of a parole revocation hearing as enunciated in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) were violated in two respects. First, petitioner contends he was not provided with a written notice of the claimed violations of parole. Secondly, petitioner contends that when his parole was revoked by the APA, he was not provided a timely written statement by the fact finders of the reasons for revoking parole. Thus, petitioner asserts he has been deprived of his liberty in violation of the United States Constitution.

In order to determine the merits of petitioner's claim, it is necessary to review the due process standards as applied to parole revocation hearings.

The Supreme Court's most definitive statement on due process rights in parole revocation proceedings came in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). That case involved two challenges to parole revocation proceedings which allegedly occurred without a hearing prior to revocation. While there was a factual question as to whether or not actual hearings had taken place, the Court considered the issue as if there had been none. *Id.* at 477, 92 S.Ct. at 2598.

As *Morrissey* makes clear, the purpose of parole is to assist individuals in an effort to reintegrate themselves into society; therefore, legitimate state interests warrant placing some conditions on the behavior of parolees. *Id.* at 478, 92 S.Ct. at 2598–99. The Court also recognizes the legitimate interest of the state in returning the individual to custody short of a full-fledged criminal trial. *Id.* at 483, 92 S.Ct. at 2601. Further, parole revocation is not part of the criminal prosecution; thus, the full panoply of due process rights due a defendant does not apply to parole revocations. *Mempa v. Rhay*, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). However, the Court indicates that the parolee has a legitimate expectation that if he substantially abides by the conditions of his parole he will continue to enjoy his qualified liberty. *Morrissey, supra*, 408 U.S. at 482, 92 S.Ct. at 2600–01, and the state has no interest in revoking parole without some informal procedural guarantees. *Id.* at 483, 92 S.Ct. at 2601.

The parole revocation decision involves two distinct steps: "The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole." *Id.* at 479, 92 S.Ct. at 2599. The second question, if the first is answered affirmatively is, "should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" *Id.* at 480, 92 S.Ct. at 2599.

Additionally, revocation of parole takes place in two stages. The first is the arrest of the parolee and the preliminary hearing. At the preliminary hearing, an inquiry should be made to determine whether there is probable cause for revocation of parole. *Id.* at 485, 92 S.Ct. at 2602. This determination should be made by a party not directly involved in the case. *Id.* at 486, 92 S.Ct. at 2603. *See, Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). "With respect to the preliminary hearing before this officer, the parolee should be given notice that the hearing will take place," and "[t]he notice should state what parole violations have been alleged." *Morrissey, supra*, 408 U.S. at 486, 487, 92 S.Ct. at 2602, 2603. If probable cause is shown, parolee may be further detained pending a final revocation hearing.

If the final hearing is requested it must be the basis for more than determining probable cause. "The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." *Id.* at 488, 92 S.Ct. at 2603.

While the Court purported not to write a code of procedure for parole revocation proceedings it determined the minimum due process requirements for the second stage of the proceedings. Essential to due process are,

(a) Written notice of the claimed violations of parole; (b) Disclosure to the parolee of evidence against him; (c) Opportunity to be heard in person and to present witnesses and documentary evidence; (d) The right to confront and cross-examine adverse witnesses ... (e) A "neutral and detached" hearing body such as the traditional parole board ... and (f) A written statement by the factfinders as to the evidence relied on and the reasons for revoking parole.

*Id.* at 489, 92 S.Ct. at 2604.

Petitioner here alleges that the written notice he received did not include the alle-

gation which subsequently was found to be one of the grounds for his parole revocation. Specifically, charge 2 of the written notice charged petitioner had violated his parole condition by taking money by force from Johnny's Rib House in Mansfield, Ohio; however, at the hearing the Board concluded the petitioner was not guilty on the robbery charge, but found him guilty of conspiracy to rob. Nowhere in the charging document was petitioner notified that the Parole Revocation Board would consider the conspiracy charge at the hearing. In fact, it seems reasonable for petitioner to have assumed the state had no intention of discussing the matter, the defendant having been previously acquitted of the charge in a jury trial in state court. The Court of Appeals, in reviewing the mandamus action filed by petitioner (the equivalent of state habeas corpus proceedings) stated:

> [I]t is quite clear that the parole revocation proceedings were so conducted that relator was fully aware of the conspiracy charge ... At the *outset of the hearings, references were made to* both the conspiracy and robbery charges ... Relator has pointed to no evidence that he was prevented from presenting because of lack of a more formal statement with respect to the conspiracy charge, ... Even assuming there to be a technical defect which we do not expressly find, relator has not demonstrated a clear legal right to the requested writ upon this basis. (emphasis added).

*State of Ohio ex rel. Atkins v. Denton,* No. 79AP–450 at 2–3 (Ohio 10th App.Dist.1979).

The Supreme Court of Ohio, in affirming the Court of Appeal's decision, relied on the presence of counsel before and during the revocation hearing; the fact that Atkins did present some defense to the conspiracy charge by submitting the acquittal form signed by the jury which heard the criminal conspiracy case; and the fact that he called a member of that jury to testify on his behalf. Thus, the Court concluded, "[a]ppellant has not shown either prejudice or lack of opportunity to defend relative to the conspiracy to commit robbery charge." *State ex rel. Atkins v. Denton,* 63 Ohio St.2d 192, 193, 406 N.E.2d 1390 (1980).

The focus of the Court of Appeals and the Ohio Supreme Court is on the prejudicial nature of the error by the Parole Board. That focus, we conclude, is misplaced. While there needs to be more than a technical error, the fundamental purpose of the due process hearing rights of *Morrissey* is to provide the parolee with a full and fair opportunity to address both the question of the alleged violation of his parole conditions and the factors which may mitigate against his recommitment to prison. That the petitioner, with the assistance of counsel, did proffer some defense to the conspiracy charge when it became apparent that the Parole Board was going to consider the issue does not relieve the Board of the due process requirement of fair notice.

Notice at the commencement of a parole revocation hearing does not meet the due process requirements of *Morrissey;* where the Board has advance information or reason to believe that a violation has occurred, *prior* notice to the parolee is essential. *Carson v. Taylor,* 540 F.2d 1156 (2nd Cir. 1976). Notice is essential to one whose liberty is at stake in order that he be able to "marshal the facts in his defense and to clarify what the charges are." *Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974). The disparity between the actual written notice and the Parole Board's asserted grounds for parole revocation offends the Fourteenth Amendment due process standards set forth in *Morrissey. See, Carson, supra,* at 1159.

This Court is not in the position to speculate as to what might have happened had petitioner been provided written notice of the conspiracy charge at the same time the other three allegations were presented to him. As counsel for petitioner pointed out in the briefs to the Ohio Court of Appeals and Supreme Court the Ohio Revised Code statute for conspiracy, O.R.C. § 2923.01 is far different from the robbery statute, O.R.C. § 2911.02. Thus, it cannot be said that petitioner would be ready to prove he was not guilty on the conspiracy charge

simply because he may have prepared a defense to the charge of robbery.

The burden on the state to provide accurate notice to petitioner is minimal; no legitimate state interest can be served by telling a parolee that he is being charged for violating his parole on one ground and then rescinding that parole on another.

This Court also notes that regulations and procedures governing parole revocation adopted by the APA include a timely written notice requirement. Regulation 5120: 1–1–19 incorporates the requirement of regulation 5120: 1–1–18 that "at least four days prior to the hearing, the releasee shall be notified . . . in writing as to: the alleged violations of the release. Therefore, aside from the due process considerations the APA has not complied with its own requirements.

In the opinion of the Ohio Court of Appeals denying the extraordinary writ to petitioner, the Court contended that even if the Court had granted the writ, upon rehearing on the parole violation charges, the same result would occur because petitioner "makes no contention that he was not properly found to have violated his parole with respect to the charge of change of residence, which would well have alone resulted in parole revocation . . ." *State of Ohio ex rel. Atkins v. Denton, supra,* at 4. While in fact, that scenario may well occur it is not a foregone conclusion. Even if it is determined petitioner violated parole. *Morrissey* dictates that it is necessary to consider whether recommitment to prison is the best method to improve a parolee's chances of rehabilitation. *Morrissey, supra,* 408 U.S. at 480, 92 S.Ct. at 2599. In addition, the parolee must be afforded an opportunity to provide mitigating reasons for his conduct or proffer other grounds to suggest that action other than recommitment to prison is warranted.

This Court would also note that a parolee faced with possible revocation of parole on such serious charges as petitioner was faced with here, and who, when he arrives at the hearing, is asked to defend against a conspiracy to commit robbery charge as well, is unlikely to spend much time or attention in either rebutting the allegation or offering mitigating circumstances to explain the change of residence without the prior written consent of his parole officer. Thus, a rehearing for petitioner in these circumstances does not appear to be frivolous or unwarranted.

Because the issue of fair notice of the charges is dispositive of the issue of procedural due process protections, and in light of the fact that petitioner, subsequent to the filing of his state court action did receive a written statement outlining the basis the evidence relied on and the reasons for revoking parole, this Court need not address that issue.

■ The appropriate remedy for the denial of procedural due process protections in parole revocation hearings is to grant a new hearing. *Ford v. Wainwright,* 549 F.2d 981 (5th Cir. 1977). Thus, the APA is given sixty days to grant a parole revocation hearing in compliance with the Fourteenth Amendment due process requirements of *Morrissey v. Brewer, supra* and in compliance with the APA's own administrative regulations. If petitioner is not afforded such a hearing within sixty days this writ will be granted.

SO ORDERED.