**Scott Andrew WITZKE, Petitioner,**

v.

**Pamela K. WITHROW, Respondent.**

**Scott Andrew WITZKE, Plaintiff,**

v.

**William J. HUDSON, et al., Defendants.**

**Nos. G88–325 CA1, G87–944 CA1.**

United States District Court,
W.D. Michigan, S.D.

Nov. 9, 1988.

Thomas Woods, Lansing, Mich., for petitioner.

Becky Lamiman, Asst. Atty. Gen., Lansing, Mich., for respondent.

Anthony Peter Govorchin, Asst. Atty. Gen., Lansing, Mich., for defendants.

Scott Andrew Witzke, Ann Arbor, Mich., pro se.

## OPINION ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION

ROBERT HOLMES BELL, District Judge.

On September 19, 1988, U.S. Magistrate Joseph G. Scoville issued a report and recommendation (R & R) in these consolidated cases. The R & R was issued pursuant to this court's order of reference dated May 31, 1988. 28 U.S.C. section 636(b)(1)(B). Both parties have objected to certain portions of the R & R. The court has reviewed de novo all factual and legal issues that any party has addressed in its objections. See 28 U.S.C. section 636(b)(1)(C). Upon independent review, the court modifies the magistrate's factual findings on three immaterial issues, adopts the remainder of the R & R, and adopts the orders proposed by the magistrate.

### A. Factual Objections

The magistrate's R & R was issued after two days of evidentiary hearings, review of several deposition transcripts, and review of exhibits A through U. For the most part, the parties have not objected to the magistrate's Findings of Fact, found at pages 3 through 21 of the R & R. In response to specific objections by the parties, the Findings of Fact are modified to the following limited extent: (a) The Parole Board can revoke parole for up to 12 months, not 18 months (R & R, at 10); (b) In addition to his opportunity to address the issue of mitigation at the PV hearing, petitioner also had and exercised the opportunity to submit documents to the Parole Board after the PV hearing (R & R, at 15); (c) The word on page 41 of the R & R, third line from the bottom, should be "unconstitutional." [p. 1355, infra] * The court deems each of these modifications to be immaterial to the outcome of this case. Except as modified above, the magistrate's Findings of Fact are hereby ADOPTED as the opinion of the court.

* Editor's Note: The correction has been made.

### B. Legal Objections

The court has carefully reviewed the legal objections of each party and finds them to be unpersuasive, for the reasons stated below.

On the issue of exhaustion of state remedies, the court finds, on the peculiar and narrow facts of this case, that petitioner has exhausted his state remedies.

On the core issue of these cases, the court agrees that Mich.Comp.Laws 791.240a is unconstitutional as applied by the Michigan Parole Board. The court is compelled to this conclusion by a careful consideration of the undisputed facts and the application of controlling precedent to those facts. See Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Preston v. Piggman, 496 F.2d 270 (6th Cir.1974); Moss v. Patterson, 555 F.2d 137 (6th Cir.) (per curiam), cert. denied sub nom. Kette v. Moss, 434 U.S. 873, 98 S.Ct. 221, 54 L.Ed.2d 153 (1977).

On the issue of the proper relief in the habeas action (case G88–325), the court concurs that a new mitigation hearing, with the full panoply of Morrissey rights, is all that petitioner is entitled to. The cases cited by petitioner in support of his request for unconditional release on parole are not apposite. They deal with the circumstance in which a parolee is given no hearing on the revocation issue. The appropriate remedy for denial of procedural due-process protections in a revocation hearing is to grant a new hearing. Atkins v. Marshall, 533 F.Supp. 1324, 1329 (S.D.Ohio 1982).

Finally, the court concurs in the propriety of the recommended declaratory relief in the section 1983 case (case G87–944) and in the impropriety of injunctive relief. Any relief for past violations of petitioner's due-process rights is properly brought by habeas corpus petition. See Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed. 2d 439 (1973). Hence, petitioner's claims arising from the 1987 revocation of his parole are properly, and adequately, dealt with in the habeas corpus action. The second possible claim for injunctive relief concerns future revocations of petitioner's pa-

role. On this issue, the recommended declaratory relief is sufficient. Where the defendants are government officials, the coercive force of an injunction is often unnecessary: the court may properly assume that the defendants will comply with a declaratory judgment and comport themselves accordingly in the future. *See Poe v. Gerstein,* 417 U.S. 281, 94 S.Ct. 2247, 41 L.Ed.2d 70 (1974) (per curiam) ("The district court properly refused to issue the injunction; for there was no allegation here and no proof that respondents would not, nor can we assume that they will not, acquiesce in the decision."); *Doe v. Air Force,* 812 F.2d 738 (D.C.Cir.1987). In the unlikely event that state officials disregard the court's declaratory judgment, an appropriate injunction could issue. *State of Tennessee v. Herrington,* 626 F.Supp. 1345, 1361 (M.D.Tenn.1986).

Accordingly, the conclusions of law set forth in the R & R are hereby ADOPTED in their entirety as the opinion of this court. The orders recommended by the magistrate (R & R, at 42–43) will issue forthwith.

### MAGISTRATE'S REPORT AND RECOMMENDATION

JOSEPH G. SCOVILLE, United States Magistrate.

In these consolidated actions, Scott Witzke, a state prisoner, challenges the procedures by which his parole was revoked. Case No. G87–944 is a civil rights action brought pursuant to 42 U.S.C. § 1983. Witzke's original complaint alleged that Mich.Comp.Laws § 791.240a is unconstitutional, in that it denies parole violators in Witzke's circumstances their due-process right to a hearing on the issue of mitigation before revocation of their parole. His complaint sought an order compelling the parole authorities to grant him a new hearing. Case No. G88–325 is a habeas corpus action brought pursuant to 28 U.S.C. § 2254. In his habeas petition, Witzke claimed that the procedures by which his parole was revoked violated the Due Process Clause of the Fourteenth Amendment. His petition sought reinstatement to parole status, expungement of his record, and other relief.

By order entered on May 3, 1988, I consolidated both actions for pretrial purposes and appointed Thomas Woods, Esq., as counsel for Mr. Witzke. By order dated May 31, 1988, Judge Bell directed that I conduct a consolidated evidentiary hearing on all disputed issues in the captioned cases, pursuant to 28 U.S.C. § 636(b)(1)(B).

I conducted the evidentiary hearing on August 3 and August 18, 1988. I heard testimony from Mr. Witzke (hereafter referred to as "petitioner") and from Parole Board Chairman Hudson, Board Member Richardson, and Parole Agent Kelsau. Thomas Rasdale, an assistant clerk of the Michigan Court of Appeals, also testified on the issue of exhaustion of state remedies. I also received Exhibits A through U, without objection by either party. After the hearing, the parties submitted the depositions of Parole Board Members Moss, Johnson, Gach and Walbrecq, which were made part of the hearing record.

The crux of both cases involves the constitutionality of the procedures followed by the Parole Board in revoking petitioner's parole. Because one of the grounds for parole revocation was petitioner's conviction of a misdemeanor, the Parole Board did not afford him a full revocation hearing. The Parole Board took this action pursuant to Mich.Comp.Laws § 791.240a(1), which provides that when the parole violation arises from conviction of a felony or misdemeanor, the parolee has no right to a fact-finding hearing before parole is revoked. Petitioner contends that the statute and the Parole Board's action deprived him of his right to a hearing on the mitigation phase of the parole revocation decision, in violation of the due-process principles enunciated in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and later cases. On the basis of the hearing evidence, I conclude that Mich.Comp.Laws § 791.240a(1) is unconstitutional as applied in this case and recommend that a writ of habeas corpus issue unless petitioner is granted a new parole revocation hearing.

1342

## FINDINGS OF FACT

### A. *Michigan's Parole Revocation System*

Michigan statutory law invests a seven-member Parole Board with the power to grant, modify, or revoke paroles. Mich.Comp.Laws §§ 791.232–.241. The statute establishes a procedure for revoking the parole of a parolee charged with violation of his parole conditions. Mich.Comp.Laws § 791.239a–.240a. The statute provides, in general, that every parolee accused of a violation is entitled to a preliminary hearing within ten days of his arrest. The sole issue at the preliminary hearing is whether there is probable cause to believe that the conditions of parole have been violated. At the preliminary hearing, the parolee is accorded certain procedural rights, such as written notice of the time, place, and purpose of the preliminary hearing, disclosure of the evidence, the right to testify and present witnesses and evidence, and the right, under most circumstances, to confront and cross-examine adverse witnesses. Mich.Comp.Laws § 791.239a.

If probable cause is found, most parolees are entitled to a fact-finding hearing before a member of the Parole Board within 45 days of becoming available for return to a correctional facility. Mich.Comp.Laws § 791.240a(1). The statute again provides certain procedural safeguards at the fact-finding hearing, including written notice, the right to counsel, disclosure of the evidence, opportunity to testify, present witnesses, and cross-examine adverse witnesses, and to "present other relevant evidence in mitigation of the charges." Mich.Comp. Laws § 791.240a(2)(d). If a preponderance of the evidence supports the charge, the Board may revoke parole. Mich.Comp. Laws § 791.240a(6).

The statute does not, however, afford a parolee a right to a fact-finding hearing when the ground for revocation is the parolee's conviction of a crime while on parole. The first sentence of the statute grants a fact-finding hearing to a parolee "under accusation of a violation of parole, other than the conviction of a felony or misdemeanor punishable by imprisonment under the laws of this state, the United States, or any other state or territory of the United States." Mich.Comp.Laws § 791.240a(1). This statutory exception, and the Parole Board's actions under it, form the basis for this case.

The evidence at the hearing showed that Michigan's parole revocation system is, in practice, more complicated than the two-step process envisioned by the statute. The evidence showed the following steps:

*Step 1. Interview with Parole Agent.* When a parolee is arrested for violation of conditions of his parole, a parole agent (employed by the Bureau of Field Services of the Department of Corrections) will conduct an initial interview at the place of incarceration. At the interview, the parolee is given a written "Parole Violation Charges" sheet, which contains a statement of the charges against him (Exhibit D). The reverse side of the form (Exhibit D–1) contains a recitation of the parolee's rights under the statutes discussed above. The parole agent typically reads the parolee the charges and his rights. The agent asks whether the parolee wishes to exercise his right to a preliminary hearing. If so, the parole agent contacts his area manager, who schedules a preliminary hearing. (Kelsau Testimony).

*Step 2. Preliminary Hearing.* The preliminary (or probable cause) hearing is held within ten days of arrest unless waived. This hearing is typically held in the county jail where the parolee is being detained. It is conducted by a hearing examiner designated by the Bureau of Field Services. The parolee is present and is afforded the rights set forth by statute. The hearing examiner prepares written findings summarizing the evidence and determining the presence or absence of probable cause on each charge (Exhibit H). The parolee receives a copy of the report. If probable cause is found, the process proceeds to the next stage.

*Step 3. Parole Violation Report.* The parole agent then prepares a "Parole Violation Report" (Exhibit G). This form is prepared for the benefit of the Parole Board. It summarizes the charges, reports the

agent's impressions of the parolee's adjustment on parole and contains a recommendation. The parolee does not receive a copy of this report. (Richardson Testimony).

*Step 4. Parole Violation (PV) Hearing.* The next step of the proceedings is not specifically envisioned by the Michigan statute. Within 45 days of the parolee's availability to the Board, a Parole Board member conducts a parole violation hearing. These hearings are usually conducted on the premises of the Phoenix Correctional Facility of the Department of Corrections. Because of logistical problems, the Parole Board schedules PV hearings on as little as one day's notice to the correctional facility. The parolee may receive no notice at all until he is summoned before the Board member. (Hudson Testimony).

According to Chairman Hudson's testimony, the PV hearing has two purposes. The first is to determine whether the parolee is guilty of a violation. If guilt cannot be established by a criminal conviction or an admission, there must be a further hearing, called a "full revocation hearing," to determine guilt. The second purpose is the mitigation phase, at which the Board decides the proper disposition of the case.

The testimony of the Parole Board members indicates that each one handles PV hearings slightly differently. In all cases, only the Board member and the parolee are present. The proceedings are tape-recorded. In general, the hearing begins with a statement concerning the nature of the hearing. The Board member then reads each charge to the parolee and asks whether the parolee pleads "True" or "Not True" to each.

The next step in the PV hearing varies, according to circumstance. In general, however, one of the following takes place:

(1) If the parolee is not charged with a crime and pleads "not true" to all charges, the Board member will inform the parolee of his right to a full revocation hearing, at which the parolee may be represented by retained or appointed counsel, call witnesses, cross-examine accusers, and otherwise exercise the rights set forth in Mich.Comp. Laws § 791.240a. (Richardson Testimony; Gach Dep., p. 4). The Parole Board member also states that the parolee may waive the formal revocation hearing and have the member conclude proceedings on that day. (Richardson Testimony).

(2) If the parolee pleads "true" to one or more charges, the Board member may dismiss the remaining charges. The purpose of dismissing the remaining charges is to avoid the need for a formal hearing. (Richardson Testimony; Johnson Dep., pp. 7, 15). The Board members believe that they have discretion to dismiss the remaining counts, or not, depending on the seriousness of the counts. (Richardson Testimony; Walbrecq Dep., p. 14). If the remaining charges are dismissed, no formal revocation hearing is held, and the Board member proceeds to consideration of the appropriate disposition of the case on the basis of the admitted violation. (Richardson Testimony).

(3) If the parole revocation proceeding is based upon the parolee's conviction of a felony or misdemeanor, the case proceeds in much the same fashion as case (2) above. At the outset of the hearing, the parolee is informed that the conviction constitutes an automatic violation of parole. (Richardson Testimony). Apparently, all Board members, except Member Johnson, inform the parolee that, by virtue of the conviction, the parolee has no right to a formal revocation hearing. (Richardson Testimony; Johnson Dep., pp. 7–9; Moss Dep., pp. 11–12; Walbrecq Dep., pp. 11–12). The Board member then asks the parolee to plead "true" or "not true" to any remaining charge. If the parolee pleads "not true" to any charge, the Board member will typically exercise discretion to dismiss that charge so as to avoid a full revocation hearing. (Richardson Testimony; Johnson Dep., pp. 15, 17; Walbrecq Dep., p. 14). As Member Johnson testified: "Generally when conducting a parole violation hearing where there is a conviction you do everything possible within the law not to go to a formal hearing because you have a violation of a charge." (Dep., p. 15). The Board member then proceeds to consider

the appropriate disposition of the case, without any further opportunity for testimony, cross-examination, or other formal procedure. The Board member merely interviews the parolee on the issue of mitigation and discusses with the parolee the member's recommended disposition of the case. (Richardson Testimony; Hudson Testimony).

*Step 5. Full Revocation Hearing.* Parolees who plead "not true" to all counts and whose parole violation charges are not based on conviction of a crime are afforded a full revocation hearing. The hearing is a formal, adversarial proceeding at which both sides are represented by counsel. The parolee has the right to call witnesses, confront and cross-examine his accusers, examine documentary evidence, and present relevant evidence on the issues of guilt and mitigation. This proceeding is conducted before a member of the Parole Board.

*Step 6. Parole Board Action.* After a PV hearing, the Board member prepares a handwritten summary of the proceedings (Exhibit J). This form summarizes the charges, the parolee's comments, the member's findings and conclusions, and the member's recommendation for action. The full Board then meets in executive session and passes upon the member's recommended disposition. (Hudson Testimony; Walbrecq Dep., pp. 7, 17–20). The individual member cannot make a final disposition; only a majority of the Board can. (Moss Dep., pp. 22–24). Although a tape recording is made of the PV hearing, the reviewing Board members typically do not review it before voting on a parolee's case. (Hudson Testimony). The only information they have concerning the statements and views of the parolee, as expressed during the PV hearing, is the Board member's handwritten summary (Exhibit J).

The full Parole Board has wide discretion in dealing with a parolee found guilty of a violation of his parole conditions. The Board can revoke parole for up to 18 months, can modify conditions of parole, or can reinstate the person to parole despite the violation. (Hudson Testimony; Richardson Testimony; Moss Dep., p. 13). The same is true when the parolee has been convicted of a misdemeanor. The mere conviction of a misdemeanor does not automatically revoke parole. (Moss Dep., p. 12). Parole Board action is required, and the Board retains complete discretion to revoke or to reinstate parole, even in the case of a conviction. (*Id.*, pp. 12–13; Richardson Testimony; Hudson Testimony).

### B. *Revocation of Scott Witzke's Parole*

In 1982, at age 17, petitioner was convicted in the Washtenaw County Circuit Court of the felonies of forgery, uttering and publishing, and receiving and concealing stolen property. The court sentenced him to a term of imprisonment of 2½ to 14 years. He served time in the state penal system from December, 1982, through August, 1984, at which time he was released on parole. Petitioner was free for twenty months, but his parole was then revoked for wilful failure to report to his parole agent. After serving an additional six months in prison, petitioner was released on parole a second time in November of 1986.

On May 17, 1987, while petitioner was on his second parole, he was involved in an incident with the Ann Arbor Police. During that incident, petitioner was placed in the back seat of a police cruiser. He kicked the rear door and window of the cruiser, causing damage. He was arrested and charged with malicious destruction of police property, a felony.

On May 19, 1987, petitioner's parole agent, Agent Kelsau, began revocation proceedings against him. Agent Kelsau interviewed petitioner in the Washtenaw County Jail (Step 1 above). Agent Kelsau gave petitioner the "Parole Violation Charges" sheet, which recited the charges against him (Exhibit D). He also read petitioner the charges and his rights under Michigan law (Exhibit D–1). The parole revocation charges were as follows:

*Count # 1 Violation of Parole Rule # 3:*

On or about 5–17–87 you were involved in behavior which constitutes a violation of State law. You kicked the rear passenger window and door of the Ann Ar-

bor Police Patrol vehicle with your feet causing damage. You were subsequently charged with Malicious Destruction of Police Property.

*Count # 2 Violation of Parole Rule # 3:*

On or about 5–17–87 you were involved in behavior which constitutes a violation of State law. During a routine traffic stop by Ann Arbor Police, you failed to wear seat belts as a passenger in a 1979 Ford two door vehicle.

*Count # 3 Violation of Parole Rule # 7:*

On or about 5–15–87 you failed to comply with the written request of your agent by failing to report on 5–15–87 as agreed upon on 5–14–87 for routine intensive reporting.

*Count # 4 Violation of Parole Rule # 7:*

On or about 5–17–87 you failed to comply with the written order of the Parole Board special condition # 1 by intimidating, being abusive and threatening toward police officers by kicking the police vehicle rear window and door.

(Exhibit D). Kelsau explained petitioner's right to a preliminary hearing, which petitioner exercised. (Witzke Testimony; Kelsau Testimony).

On May 27, 1987, petitioner pleaded guilty in state district court to a reduced charge of destruction of police property valued under $100, a misdemeanor. On the next day, Agent Kelsau again interviewed him in jail and gave him a supplemental "Parole Violation Charges" sheet (Exhibit E), which contained a fifth charge, stemming from the misdemeanor conviction. Significantly, Exhibit E states: "On 5–27–87 you pled to Malicious Destruction of Property Under $100 in 15th District Court. Therefore you are not entitled to a parole violation hearing." Agent Kelsau testified that at this interview, he did not explain to petitioner a right to any further hearing on this added charge, because he believed petitioner had no right to either a preliminary or a full revocation hearing on revocation charges based on a conviction.

On the next day, May 28, a hearing examiner conducted a preliminary hearing on the charges against petitioner (Step 2 above). The examiner did not pass upon count 1, the felony charge, because the preliminary examination in district court would suffice to establish probable cause. On count 3, he found probable cause, on the basis of petitioner's admitted failure to report as required. On count 4, after a detailed review of the evidence, the examiner found no probable cause to believe that petitioner had threatened or intimidated police officers. The examiner did not pass upon added count 5, as petitioner had already pleaded guilty to the charge in court. (See report of examiner, Exhibit H).

On June 2, 1987, Agent Kelsau prepared a Parole Violation Report (Step 3 above). The report (Exhibit G) summarized the proofs against petitioner, reported on his "marginal" adjustment while on parole, and recommended petitioner's reincarceration at a higher level of custody. The members of the Parole Board had access to this report, but petitioner did not. (Richardson Testimony; Hudson Testimony).

On June 18, 1987, petitioner appeared before Board member Gloria Richardson for a PV hearing. Petitioner testified that he had no advance notice of the hearing, but was merely told to report immediately to the prison control center. No witness's testimony or other evidence contradicted this testimony. In fact, Chairman Hudson's testimony tended to corroborate petitioner's testimony. Hudson testified that the Parole Board typically tells the correctional institution that the Board member will hear PV cases "tomorrow." There is no evidence that petitioner received any prior notice of his PV hearing.

The record contains both a tape recording (Exhibit S) and an uncertified transcript (Exhibit I) of the PV hearing before Member Richardson. I compared the tape with the transcript and found only immaterial differences between them. The tape, transcript, and Member Richardson's testimony disclose that she followed scenario 3, outlined in Part A above. That is, Member Richardson first noted that petitioner's misdemeanor conviction was an automatic violation of his parole. She then called upon him to plead "true" or "not true" to the charges that remained pending after the

preliminary hearing. Petitioner pleaded "not true" to the felony charge, count 1. He pleaded "true" to count 3, failure to report. On count 5, which was based on the misdemeanor conviction, petitioner pleaded "true." Consistent with her general practice (as explained in her testimony), Member Richardson did not advise petitioner of any right to a further hearing or any opportunity to present witnesses, evidence, or cross-examine adverse witnesses. She explained to petitioner that he was not entitled to a hearing "by virtue of the fact that you have a conviction" (Exhibit I, 3). Member Richardson then engaged in a discussion with petitioner concerning the circumstances of the violations, his attempts to adjust in the community and overcome his apparent alcohol problem. During this conversation, petitioner alluded to his attempts to arrange an in-patient alcohol therapy program and to present this to the Parole Board as an alternative to reincarceration. (*Id.*, p. 9).

At the end of the PV hearing, Member Richardson dismissed count 1, the only outstanding count to which petitioner had pleaded "not true." This dismissal, as explained in Part A above, obviated the opportunity for a full revocation hearing. She read her findings and recommended disposition of reincarceration for twelve months.

It is undisputed that petitioner did not receive a full revocation hearing. (Richardson Testimony; Hudson Testimony). He had no opportunity to call witnesses on the issue of mitigation, to cross-examine the parole agent or others, or to examine the documentary evidence against him (Exhibit G). The only opportunity that petitioner had to address the issue of mitigation was his discussion with Member Richardson at the PV hearing. Board Member Richardson prepared a handwritten summary of the PV hearing (Exhibit J). The summary was reviewed by three other Board members, who initialed it to show their concurrence. The presence of at least two signatures on this form allowed the secretary of the Parole Board to refer the case to the full Board. (Moss Dep., pp. 7–8).

The full Parole Board met and considered petitioner's case on July 10, 1987 (Step 5 above). Petitioner was not present. The Board had before it Member Richardson's handwritten summary (Exhibit J) and petitioner's institutional file. The tape of the PV hearing was available, but there is no evidence that any member reviewed it. A majority of the Board signified their assent to Member Richardson's recommended disposition by initialing a form (Exhibit K), that contained the recommended disposition in code. On July 17, 1987, the Board issued its formal "Parole Board Action" (Exhibit F), which was a typed version of Exhibit J. Petitioner was reincarcerated for a term of twelve months, subject to further review at that time. He remains incarcerated on a nine-month extension imposed by the Board.

### C. *Petitioner's Attempts At Judicial Review*

Petitioner made several attempts to challenge in court the revocation of his parole. The first was an action for state habeas corpus in the Allegan County Circuit Court (File No. 87–9466), filed on August 17, 1987, one month after the issuance of the final board action. During the pendency of this case in the circuit court, petitioner filed an original action in the Michigan Court of Appeals, in which petitioner complained that the circuit judge was not proceeding in accordance with the court rules. The Clerk of the Court of Appeals returned petitioner's papers to him for his failure to provide enough copies. Petitioner then wrote to the Michigan Supreme Court, asking it to order his case to be filed in the Court of Appeals. Nothing eventuated in either appellate court. (Witzke Testimony).

On November 23, 1987, Circuit Judge Corsiglia issued an opinion (Exhibit L) and subsequently an Order (Exhibit A, dated December 14, 1987) denying petitioner's request for habeas relief. The court's opinion stated that Michigan habeas relief is available only for "radical defects" rendering a proceeding "absolutely void" (Exhibit L, p. 1). The opinion held that parolees are not entitled, either under constitutional or Michigan law, to a hearing when their pa-

role is revoked because of a misdemeanor conviction.

While his Allegan County action was pending, in August of 1987, petitioner filed a Section 1983 complaint in this court against Board Member Richardson (G87–752). His complaint alleged that Member Richardson violated his Fourteenth Amendment rights by revoking his parole without proper notice or hearing. The complaint sought declaratory relief, injunctive relief, and damages. On October 13, 1987, Chief Judge Douglas W. Hillman dismissed the action, holding that plaintiff's attack on his confinement could only be brought by habeas corpus petition, after exhaustion of all state remedies. (Opinion, Exhibit P). The Sixth Circuit Court of Appeals affirmed by order dated May 8, 1988 (Exhibit R).

On November 24, 1987, petitioner began a second state habeas action, this time in the Ionia County Circuit Court. By order dated January 13, 1988 (Exhibit M), Circuit Judge James L. Banks dismissed the case *sua sponte* on the basis of the previous decision in Allegan County.

On March 22, 1988, petitioner attempted to begin an original action for habeas corpus in the Michigan Court of Appeals (No. 96025). On March 30, 1988, Thomas J. Rasdale, Assistant Clerk, returned petitioner's papers to him with a cover letter (Exhibit B). The letter relied on Mich.Comp. Laws § 600.4310, which provides that a habeas corpus complaint to inquire into the cause of detention may not be filed on behalf of a prisoner serving a sentence under a criminal conviction. The letter went on to state that petitioner could file an application for leave to take a delayed appeal from the Allegan County Circuit Court.

On April 5, petitioner wrote to Mr. Rasdale, arguing that his habeas petition was proper under state law and asking that it be filed (Exhibit T). This letter was not immediately answered. On April 11, petitioner wrote to Chief Judge Danhof of the Court of Appeals (Exhibit U). Petitioner, in addition to making threats of reprisal, asked the Chief Judge to review the matter and to order his papers filed. On April 15,

1988, Mr. Rasdale responded to both letters, advising that petitioner was free to resubmit his papers to the court. He went on to state: "However, I must inform you that your writ of habeas corpus is subject to dismissal on the Court's own motion for the reasons described in our previous correspondence" (Exhibit C).

Mr. Rasdale, a graduate lawyer, explained in his testimony that one of his functions is to screen filings to ensure that they are proper under Michigan law and court rules. Improper papers are returned. He testified that, in his opinion, Mich. Comp.Laws § 600.4310 prohibited any state prisoner incarcerated under a criminal conviction from seeking release on habeas petition. He further explained that his advice to petitioner concerning the availability of a delayed appeal from the Allegan County decision was based on the assumption, now recognized as erroneous, that the Allegan County action was a petition for review under the Administrative Procedures Act and not a habeas action. Mr. Rasdale pointed out that at the time he wrote his letters, he only had a copy of Judge Corsiglia's order and not the explanatory opinion.

Finally, petitioner began a mandamus action in Jackson County Circuit Court (File No. 88–48107). On June 15, 1988, Circuit Judge Gordon W. Britten entered an opinion and order dismissing this case on the ground that mandamus was not a proper remedy (Exhibits N and O).

### D. *Present Cases*

The present cases, like those that preceded them, challenge the revocation of petitioner's parole. The civil rights action, No. G87–944, originally named the Parole Board as a defendant. The defendant moved to dismiss for failure to state a claim. Fed.R.Civ.P. 12(b)(6). In an opinion and order entered on February 12, 1988, Judge Robert Holmes Bell found that the complaint stated a claim under the Fourteenth Amendment and denied the motion. Thereafter, petitioner sought and was granted leave to file an amended complaint, dismissing the Parole Board and substituting Chairman Hudson and Robert Brown,

Director of the Department of Corrections, as defendants. The amended complaint sought release from parole status, a declaration of the unconstitutionality of Mich. Comp.Laws § 791.240a(1), and monetary relief.

The amended complaint was served on defendants Hudson and Brown, who failed to respond. On April 18, 1988, the clerk entered a default against defendants. Defendants never sought to set aside the default, and they remained in default at the time of the evidentiary hearing. At the end of the hearing, however, plaintiff consented to vacating the default, on condition that he be allowed to file a second amended complaint.

The habeas corpus action, G88–325, was filed after the civil rights case. In response to the habeas petition, respondent filed an answer dated May 19. The answer raised only the issue of petitioner's alleged failure to exhaust available state remedies, and asserted the availability of state judicial review of the parole revocation under the Michigan Administrative Procedures Act, Mich.Comp.Laws § 24.301, et seq.

On August 3 and August 18, I conducted an evidentiary hearing on all disputed issues in both cases, pursuant to Judge Bell's order of reference. On the basis of the facts adduced at the hearing and controlling precedent, I recommend that petitioner be granted relief, for the reasons stated below.

## DISCUSSION

### I. HABEAS CORPUS CASE—G88–325

#### A. *Exhaustion of State Remedies*

An important threshold issue in all habeas cases is whether petitioner has exhausted available state remedies. The federal courts may not entertain a petition for habeas relief "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b). The principle of exhaustion is based on notions of comity: "The purpose of the exhaustion requirement is to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Sampson v. Love,* 782 F.2d 53, 55 (6th Cir.), *cert. denied,* 479 U.S. 844, 107 S.Ct. 159, 93 L.Ed.2d 98 (1986). Although the exhaustion doctrine is not jurisdictional, it embodies an important principle of federalism and comity, and its requirements are to be strictly enforced. *See Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 2062, 80 L.Ed.2d 674 (1984).

A necessary corollary to the general rule in favor of exhaustion is that a petitioner is required to exhaust only those state remedies still open to him at the time he files his petition. *Engle v. Isaac,* 456 U.S. 107, 125–26 n. 28, 102 S.Ct. 1558, 1570 n. 28, 71 L.Ed.2d 783 (1982); *Keener v. Ridenour,* 594 F.2d 581, 584 (6th Cir.1979). If a remedy is unavailable to a petitioner because the time to seek that remedy has expired, or because pursuit of the remedy would be futile, then petitioner is not required to pursue that state remedy. *Keener,* 594 F.2d at 584; *see Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418 (1971) (per curiam).

During the course of these consolidated proceedings, three possible state remedies were suggested as being available to petitioner: judicial review of the parole revocation under the state Administrative Procedures Act; original application for habeas corpus in the state appellate courts; and delayed application for leave to appeal the adverse decision of the Allegan County Circuit Court in case no. 87–9466. On the peculiar facts of this case, I conclude that none of these remedies was available to petitioner at the time of filing his petition, for the reasons set forth below.

1. *Review Under The APA.* The only state remedy that is clearly available to a Michigan parolee whose parole has been revoked is judicial review under the contested case provisions of the state Administrative Procedures Act. The Michigan Court of Appeals has ruled that parole revocations by the Parole Board are reviewable under the APA. *Penn v. Department of Corrections,* 100 Mich.App. 532, 298 N.W.2d 756 (1980). This state remedy

was the only one raised by respondents in their answer to the habeas petition.

By the time of the evidentiary hearing, however, the Attorney General conceded that state-court review under the APA was not available to Witzke at the time of filing his habeas petition, because the jurisdictional appeal period of sixty days had already expired:

> However, the APA sets a 60–day time limit on the filing of appeals and the 60–day appeal period is jurisdictional. Since Petitioner did not file a timely appeal of his parole revocation under the APA, Respondent concedes that this remedy is no longer available to him.

(Respondent's Reply To Petitioner's Hearing Brief, dated August 1, 1988, at pp. 6–7). At the hearing, the Attorney General confirmed this concession and further stated that petitioner's failure to seek timely APA review was not a procedural bar to consideration of petitioner's habeas action in federal court. (Oral Argument of Assistant Attorney General Lamiman, August 3, 1988).

Accordingly, although judicial review under the APA was appropriate and available to petitioner at one time, it was no longer available to him at the time his habeas petition was filed. Petitioner was not required to exhaust this unavailable remedy. *See Engel v. Isaac,* 456 U.S. at 125–26 n. 28, 102 S.Ct. at 1570 n. 28.

■ 2. *State Habeas Corpus.* As noted above, respondents did not raise the availability of state habeas corpus in their answer. In an order entered before the hearing, I raised the possibility that this remedy might be available, and directed that the parties address its availability at the evidentiary hearing. (Order dated June 17, 1988).

By the time of the hearing, respondents were contending that state habeas corpus was available to petitioner. Respondents relied upon *Triplett v. Deputy Warden,* 142 Mich.App. 774, 371 N.W.2d 862 (1985), in which the Court of Appeals stated that habeas relief is available, in addition to APA review, to review parole revocations.

*Triplett,* however, did not address the effect of the specific Michigan statutory prohibition against granting habeas relief to convicts:

> Sec. 4310. An action for habeas corpus to inquire into the cause of detention may not be brought by or on behalf of the following persons:
>
> \* \* \* \* \* \*
>
> (3) Persons convicted, or in execution, upon legal process, civil or criminal.

Mich.Comp.Laws § 600.4310. The assistant clerk of the Court of Appeals, Thomas Rasdale, relying on this statute, twice rejected Witzke's attempt to file a habeas corpus action.

Mr. Rasdale testified at the evidentiary hearing and explained the apparent contradiction between *Triplett* and the statute. He testified that his duties include initial screening of all filings to determine their compliance with law and the court rules. He said that, in his opinion, Mich.Comp. Laws § 600.4310 precluded Mr. Witzke from applying for habeas relief. On this basis, he refused to file petitioner's habeas papers. When I asked Mr. Rasdale about the effect of the *Triplett* case, he explained that he had reviewed the court file in *Triplett* and determined that the issue of the effect of Mich.Comp.Laws § 600.4310 had never been raised in that case. He therefore persisted in his view of the preclusive effect of the statute. Neither Mr. Rasdale nor respondent's counsel contended that Mr. Rasdale was in error when he refused petitioner's habeas papers on account of the statute.

A federal habeas petitioner is not required to pursue a state remedy when its availability is speculative or conjectural. *Wilwording v. Swenson,* 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418 (1971) (per curiam). The federal habeas court will require exhaustion only if there is some "reasonable probability" that the state remedy is available. *Powell v. Wyrick,* 657 F.2d 222, 224 (8th Cir.1981), *cert. denied,* 469 U.S. 1223, 105 S.Ct. 1212, 84 L.Ed.2d 354 (1985). The "mere possibility" is insufficient. *Wilwording,* 404 U.S. at 250, 92 S.Ct. at 408. Here, a state statute, on its

face, precludes habeas relief. The Court of Appeals, through its duly authorized officer, has twice refused to file petitioner's application in reliance on the statute. The Chief Judge, although requested to intervene, has not done so. The Attorney General of the State of Michigan must not have considered habeas as available, as he did not raise it in his answer. On the record in this case, I conclude that habeas corpus is not a reasonably available remedy to petitioner under Michigan law.

■ Even if state habeas relief were theoretically available, I conclude that petitioner exhausted that remedy. As noted in the Findings of Fact, petitioner did file a habeas application in the Allegan County Circuit Court, which was denied. He then sought habeas relief in the Court of Appeals, but both the assistant clerk and the Chief Judge refused his request to file the papers. In such circumstances, the federal habeas courts do not require further exhaustion by *pro se* applicants.

*Finetti v. Harris*, 609 F.2d 594 (2d Cir. 1979), is directly on point. In that case, the petitioner attempted to file a state petition for habeas relief in the state appellate court. In *Finetti*, as here, the clerk of the court returned the habeas application with a cover letter explaining that habeas relief was not available under state law. Petitioner then sought federal habeas relief, which was granted. In rejecting the respondent's argument that the petitioner had failed to exhaust state remedies, the Second Circuit held that the clerk's actions frustrated the petitioner's attempts to receive state-court relief and absolved him of any further requirement of exhaustion. Specifically, the petitioner was not required to attempt to again convince the clerk to accept his petition, or to seek extraordinary relief from the state courts. Although the Second Circuit recognized the weighty policies of state-federal comity served by the exhaustion doctrine, those policies are not advanced by requiring further exhaustion after a state court refuses to entertain a case. 609 F.2d at 598. Subsequent cases, following *Finetti*, have held that the petitioner need not seek discretionary review in

the state supreme court, in such circumstances. *See, e.g., Danylocke v. Dalsheim*, 662 F.Supp. 961, 962 (S.D.N.Y.1987).

In summary, I conclude that state habeas relief is not reasonably available to petitioner. If it is theoretically available, I conclude on the peculiar facts of this case that petitioner has done all that is required of him in seeking state habeas relief.

■ 3. *Delayed Application For Leave to Appeal.* At the hearing, respondent also argued that petitioner can still seek leave in the Court of Appeals for a delayed appeal of the Allegan County Circuit Court denial of his state habeas petition. Again, respondent did not raise this possibility in its answer.

This contention is easily disposed of. Under Michigan law, orders of denial in habeas proceedings are not reviewable by appeal. *See In re Brock*, 144 Mich. 42, 107 N.W. 446 (1906); *Triplett v. Deputy Warden*, 142 Mich.App. 774, 371 N.W.2d 862, 866 (1985). The appropriate method of review is the filing of an original habeas action in the Court of Appeals. *Triplett*, 371 N.W.2d at 866; *Parshay v. Warden*, 30 Mich.App. 556, 186 N.W.2d 859 (1971). However, as demonstrated above, state habeas in the Court of Appeals is not available to petitioner by virtue of Michigan statute.

At the hearing, the Attorney General was unable to cite any case, statute or court rule to support the availability of appeal. The Attorney General did suggest that the Michigan Court Rules had been amended since the above-cited cases were decided. The Attorney General could not, however, point to any relevant difference between the 1963 court rules and the 1985 court rules in this regard. *See* Mich. Court Rule 3.303(A)(2).

I conclude that Michigan law does not provide for appeal of the Allegan County Circuit Court's denial of petitioner's habeas application. Where, as here, a suggested state remedy is "clearly futile," further exhaustion is not required. *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir.), *cert. denied*, 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981). This court may there-

fore address the merits of the federal habeas petition.

## B. *Merits of Habeas Petition*

 Petitioner claims that the Parole Board denied him procedural due process, in violation of the Fourteenth Amendment. He asserts that Mich.Comp.Laws § 791.240a, which deprives parolees of a fact-finding hearing before the Parole Board when their parole is being revoked for conviction of a crime, is unconstitutional. Petitioner contends that he should have been granted a fact-finding hearing, not to contest his underlying conviction, but to contest the proper disposition of his case.

The Due Process Clause of the Fourteenth Amendment prohibits the states from depriving any person of life, liberty, or property without due process of law. Any proceeding that deprives a person of a recognized liberty or property interest must accord the person, at minimum, adequate notice and an opportunity to be heard. *See Peralta v. Heights Medical Center, Inc.,* —— U.S. ——, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988). In determining the particular procedural safeguards that are due a person in a specific situation, the courts examine the seriousness of the liberty interest involved and the legitimate institutional needs of the state. *See Wolff v. McDonnell,* 418 U.S. 539, 560, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 934 (1974).

In the case of parole revocations, the Supreme Court has clearly delineated the procedural safeguards that must be afforded a parolee faced with a loss of parole. In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court recognized a protectible liberty interest in continued parole status and set forth the minimal procedural safeguards required before revocation. At minimum, due process requires that the parolee be given the following:

(1) A *preliminary hearing,* to determine whether probable cause exists to believe that the conditions of parole have been violated. 408 U.S. at 485–87, 92 S.Ct. at 2602–03.

(2) A *revocation hearing,* at which the parolee "must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." 408 U.S. at 488, 92 S.Ct. at 2603. At minimum, the revocation hearing must include the following safeguards:

a. written notice of the claimed violations;

b. disclosure of evidence against the parolee;

c. opportunity to be heard in person and present witnesses and documentary evidence;

d. confrontation and cross-examination of adverse witnesses (unless good cause exists for not allowing confrontation);

e. a "neutral and detached" hearing body;

f. a written statement as to the evidence relied on and the reasons for revocation.

408 U.S. at 489, 92 S.Ct. at 2604.

As indicated in *Morrissey* and later cases, the typical parole revocation proceeding involves two distinct components: (1) the "retrospective factual question" whether the parolee violated a condition of his parole, and (2) the discretionary question whether the violation warrants revocation. *Black v. Romano,* 471 U.S. 606, 611, 105 S.Ct. 2254, 2257, 85 L.Ed.2d 636 (1985); *Morrissey,* 408 U.S. at 488, 92 S.Ct. at 2603; *see also Moody v. Daggett,* 429 U.S. 78, 89, 97 S.Ct. 274, 279, 50 L.Ed.2d 236 (1976) (when parolee admits violation or is convicted of crime constituting violation, parole board must still determine "whether continued release is justified notwithstanding the violation"). In its decision in *Black v. Romano,* the Supreme Court made clear that its earlier cases do not forbid a statutory scheme which requires automatic revocation. Due process does not require that a state's parole board have discretion to revoke or extend parole in every case. It requires only that the parolee be given a hearing on the second question *if* such discretion exists:

Thus, the Court's discussion of the importance of the informed exercise of discretion did not amount to a holding that the factfinder in a revocation proceeding must, as a matter of due process, be granted discretion to continue probation or parole. Where such discretion exists, however, the parolee or probationer is entitled to an opportunity to show not only that he did not violate the conditions, but also that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition.

471 U.S. at 612, 105 S.Ct. at 2258.

The Michigan revocation system also recognizes the two distinct decisions that make up parole revocation. In his testimony, Chairman Hudson described these as the "violation" phase—at which the Parole Board determines, by admission, conviction or trial, whether the parolee has in fact violated conditions of parole—and the "mitigation phase," at which the Board determines the proper disposition.

All the Board witnesses agreed that the Board has complete discretion concerning the second, "mitigation," phase, even in the case of a conviction. Michigan law does not require the automatic revocation of parole upon conviction of a felony or a misdemeanor. Even in the case of a conviction, the Parole Board still has discretion to continue the parolee on parole. (Hudson Testimony; Richardson Testimony; Moss Dep., pp. 12–13).

The Michigan statutory scheme generally follows the requirements of *Morrissey*. Michigan provides for a prompt preliminary hearing on the issue of probable cause. Mich.Comp.Laws § 791.239a. If probable cause is found, *most* parolees have a right to a revocation hearing, at which the full panoply of *Morrissey* rights is available. Mich.Comp.Laws § 791.240a.

The Michigan statute does not extend the right to a revocation hearing to parolees convicted of a crime. Mich.Comp.Laws § 791.240a expressly excludes such parolees from entitlement to a revocation hearing. It is undisputed in this case that petitioner was not given a revocation hearing. (Richardson Testimony). It is also undisputed that he had no opportunity to call witnesses on the issue of mitigation, cross-examine Parole Agent Kelsau (who had filed a negative report), or exercise the other procedural safeguards described in *Morrissey*.

Respondents contend that *Morrissey* does not apply to the mitigation phase of the revocation hearing. (Asst. A.G. Govorchin Argument, August 3). They argue that the *Morrissey* procedures apply only to the violation phase, and that less elaborate procedures suffice for the mitigation phase. Accordingly, respondents say that the second part of the PV hearing before Member Richardson, at which petitioner was able to express himself on the issue of mitigation, was sufficient. Respondents also point to petitioner's ability to present letters, affidavits, and other documents to the Parole Board before it made its final decision.

■ Respondents' argument that the *Morrissey* procedures do not apply to the mitigation phase has no support in law. Respondents have not cited a single case supporting this position or holding that some lesser process is due a parolee at the mitigation stage. *Morrissey* itself acknowledges the existence of two separate questions at the revocation hearing but draws no distinction between the process due at the violation stage and the mitigation stage. 408 U.S. at 488, 92 S.Ct. at 2603. *Black v. Romano* is even more explicit. It makes clear that where the parole board has discretion, the parolee "is entitled to an opportunity to show ... that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition." 471 U.S. at 612, 105 S.Ct. at 2258. Here, the Parole Board unquestionably had discretion to continue Witzke's parole, yet he was not given the process found necessary by the Supreme Court to safeguard his right to be heard on the mitigation question.

Every circuit that has considered the issue has rejected respondents' position. The two most important cases were decided by the Sixth Circuit. *Moss v. Patterson*, 555 F.2d 137 (6th Cir.) (per curiam), *cert.*

*denied sub nom. Kette v. Moss,* 434 U.S. 873, 98 S.Ct. 221, 54 L.Ed.2d 153 (1977), involved revocation of parole under an Ohio statute requiring automatic revocation of parole, without a hearing, upon conviction of a felony. Relying on *Morrissey,* the court held that the Due Process Clause required a hearing. At the hearing, the parolee would not be allowed to relitigate the first *Morrissey* question, *i.e.,* whether the parolee in fact committed a felony while on parole. 555 F.2d at 138. The parolee was entitled, nevertheless, to a hearing on the second, discretionary question, at which he could present mitigating evidence tending to show that his parole should not be revoked notwithstanding the conviction. *Id.* at 138.

*Preston v. Piggman,* 496 F.2d 270 (6th Cir.1974), is directly on point. In *Preston,* the parolee was given a formal revocation hearing, limited solely to the issue of whether he violated the conditions of parole. During that phase of the proceedings, the parolee admitted the violation. The revocation proceedings "made no provision for the parolee to offer evidence or testimony in mitigation of his offense." 496 F.2d at 273. The court held that the failure of the parole board to accord the parolee a hearing on the mitigation issue violated the Due Process Clause. In so holding, the Court of Appeals enunciated certain principles that are dispositive of the present case:

1. Due process "requires that a parole *who has admitted violating* a condition of his parole is still entitled to present evidence in mitigation." 496 F.2d at 274 (emphasis added).

2. The responsibility to afford a parolee a proper hearing rests with the parole board, despite the lack of an appropriate request by the parolee. *Id.*

3. The procedures applicable to the mitigation phase are those set forth in *Morrissey,* not some lesser procedures:

We hold that appellant is entitled to a revocation hearing that conforms to the principles of *Morrissey v. Brewer, supra, including the right to introduce evidence of mitigating circumstances* and the right to have that evidence considered by the Board before it reaches its decision.

\* \* \* \* \* \*

At the revocation hearing appellant is entitled to be represented by his attorney *who should be allowed to present witnesses and cross examine* those who testify against appellant.

496 F.2d at 275 (emphasis added).

*Moss v. Patterson* and *Preston v. Piggman* firmly establish a parolee's right to a *Morrissey* hearing on the issue of mitigation, even when parole revocation is based on a conviction or admitted violation, so long as the parole board has discretion on the mitigation issue. *Preston v. Piggman* completely undermines respondent's argument that the mitigation phase of the proceedings can be less formal than the violation stage and need not include the opportunity to present witnesses or cross-examine. Even when the parole revocation is based on a conviction or an admitted violation, the responsibility rests with the Parole Board to conduct a proper mitigation hearing which "contains those procedures outlined by the Supreme Court in *Morrissey." Preston v. Piggman,* 496 F.2d at 274.

The other circuit courts that have faced the issue have also held that a parolee whose parole is being revoked for a conviction or an admitted violation is nonetheless entitled to a *Morrissey* hearing on the issue of mitigation. *Heinz v. McNutt,* 582 F.2d 1190 (9th Cir.1978); *Shepard v. United States Board of Parole,* 541 F.2d 322 (2d Cir.1976), *vacated on other grounds,* 429 U.S. 1057, 97 S.Ct. 779, 50 L.Ed.2d 773 (1977). In *Pickens v. Butler,* 814 F.2d 237 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987), the court reaffirmed this principle, but found that the parolee had no right to a mitigation hearing because the parole board lacked discretion to continue parole under state law. 814 F.2d at 239–41. The Michigan statute and the unanimous testimony of the Parole Board members show that the Michigan Parole Board has complete discretion in this regard.

Accordingly, I conclude that petitioner was entitled to a revocation hearing complying with the procedural safeguards of *Morrissey* on the issue of mitigation. Comparison of the requirements of *Morrissey* to the facts adduced at the hearing produces the following results.

1. *Preliminary Hearing.* The preliminary hearing conducted on May 28, 1987, appears to have comported completely with *Morrissey*. Petitioner does not contest the validity of the preliminary hearing.

2. *Revocation Hearing.* The only further hearing afforded petitioner was the PV hearing before Member Richardson on June 18, 1987. Petitioner was not afforded a right to relitigate his misdemeanor conviction, but he plainly had no such right. *Moss v. Patterson,* 555 F.2d at 138. In addition, petitioner admitted his violation of the reporting condition. The only remaining issue was that of mitigation. The process afforded petitioner on the mitigation issue does not fare well when judged by the *Morrissey* standards:

a. *Notice.* Petitioner received no prior notice of the time of the hearing before being summoned for an immediate appearance before the Parole Board member. This was obviously insufficient. Proper notice must be given at a time sufficient to allow the party the opportunity to present his case. *See Peralta v. Heights Med. Center, Inc.,* 108 S.Ct. at 899. The mere fact that petitioner knew his PV hearing would take place "sometime" within the next 45 days did not cure the Board's failure to give timely notice of the specific date of the hearing. *See Atkins v. Marshall,* 533 F.Supp. 1324, 1328 (S.D.Ohio 1982).

b. *Disclosure of evidence against the parolee.* The tape recording (Exhibit S) and the transcript (Exhibit I) of the PV hearing demonstrate that no disclosure was made to petitioner of the evidence against him on the issue of mitigation.

c. *Opportunity to be heard in person and present witnesses and documentary evidence.* Petitioner did have the opportunity to be heard in person, although the lack of any prior notice of the date of the hearing rendered it impossible to meaningfully prepare for the hearing. He did have an opportunity to present documentary evidence, at and after the hearing. It is uncontested that he had no chance to present witnesses on the issue of mitigation.

d. *Confrontation and cross-examination.* It is undisputed that petitioner had no opportunity to confront or cross-examine the witnesses against him. Notably, he had no chance to cross-examine Parole Agent Kelsau, who had provided the Board with a negative report (Exhibit G).

e. *A "neutral and detached" hearing body.* Petitioner contends that Board Member Richardson was biased against him and was not neutral, detached, or impartial. He claims that Member Richardson's demeanor and tone of voice, as captured on the tape recording, demonstrate her bias. I have carefully reviewed the tape recording and cannot agree. Member Richardson was professional and businesslike throughout the proceedings. On several occasions, she did display a minimal degree of impatience with petitioner, a reaction which was totally justified by his attitude. My observation of Member Richardson's demeanor in court and my review of the tape leave no doubt that she is a fair, dedicated, and impartial public servant and that she brought no bias to the PV hearing.

f. *A written statement as to the evidence relied on and the reasons for revocation.* The Board provided petitioner with a notice of final action (Exhibit F), which stated the reasons for revocation.

C. *Remedy*

■ The foregoing analysis makes clear that petitioner's parole was revoked without adequate notice and opportunity to be heard in mitigation, as required by *Morrissey*. As relief, petitioner seeks reinstatement on parole status and expungement of his record. Although the option is facially plausible, I can find no authority to support it. "The appropriate remedy for the denial of procedural due process protections in parole revocation hearings is to grant a new hearing." *Atkins v. Marshall,* 533

F.Supp. 1324, 1329 (S.D.Ohio 1982); *accord, Ford v. Wainwright,* 549 F.2d 981, 982 (5th Cir.), *cert. denied,* 434 U.S. 926, 98 S.Ct. 407, 54 L.Ed.2d 284 (1977).

I recommend that a writ of habeas corpus issue and that the petitioner be enlarged unless he is afforded a proper revocation hearing on the issue of mitigation within 45 days of the issuance of the writ. At that hearing, petitioner should be afforded the full panoply of *Morrissey* rights. In addition, because of the delay that has occurred and the complicated issues surrounding mitigation, petitioner should be afforded counsel. *See Gagnon v. Scarpelli,* 411 U.S. 778, 790, 93 S.Ct. 1756, 1763, 36 L.Ed.2d 656 (1973); *Preston v. Piggman,* 496 F.2d 270, 275 (6th Cir. 1974).

## II. SECTION 1983 CASE—G87–944

■ In his Section 1983 case, petitioner requests much the same relief as is sought in his habeas petition. In addition, he requests monetary and declaratory relief. Judge Hillman dismissed petitioner's previous Section 1983 case, *Witzke v. Richardson,* on the ground that the relief he sought was only obtainable by habeas petition after exhaustion of state remedies. (Exhibit P). The Sixth Circuit affirmed. (Exhibit R).

The Sixth Circuit opinion in *Witzke v. Richardson* is authoritative and binding in this case. It was premised on *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), in which the Supreme Court held that an attack on the fact or duration of confinement must be pursued by habeas corpus. Applying that holding to this case, all requests for injunctive relief compelling a new revocation hearing must be dismissed.

■ Neither *Preiser* nor the opinion in *Witzke v. Richardson* preclude declaratory relief aimed at future, rather than past, conduct. The Supreme Court established this important limitation on the *Preiser* doctrine in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In that case, the Court held that a declaratory judgment aimed only at the *prospective* enforcement of constitutionally invalid

prison regulations was not precluded by *Preiser,* although injunctive relief to restore a past deprivation of liberty could only be brought by habeas petition. 418 U.S. at 554–55, 94 S.Ct. at 2973–74; *see also Gerstein v. Pugh,* 420 U.S. 103, 107 n. 6, 95 S.Ct. 854, 859 n. 6, 43 L.Ed.2d 54 (1975); *Pope v. Chew,* 521 F.2d 400 (4th Cir.1975) (Prisoner whose pardon was revoked without proper hearing entitled to declaratory judgment in Section 1983 action). Accordingly, petitioner's request that Mich.Comp.Laws § 791.240a be declared unconstitutional, as it relates to any parole hearing that petitioner may face for *future* parole violations, is properly before the court.

■ I note at the outset that the Michigan statute is not unconstitutional on its face. In order to successfully challenge an act as unconstitutional on its face, "the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). The Michigan statute challenged here is indeed valid in many circumstances. If the parole revocation is not based upon conviction of a crime, the statute establishes procedures that meet and sometimes exceed the requirements of *Morrissey.* In cases, such as the instant one, where the revocation is based on a conviction, the statute does not forbid a full revocation hearing. It merely provides that the parolee is not entitled to such a hearing as a matter of right. Some Parole Board members, in some circumstances, give parolees a full revocation hearing even when they have been convicted of a crime. (*See, e.g.,* Johnson Dep., pp. 18–21). In such circumstances, the parolee is not deprived of due process. Mich.Comp.Laws § 791.240a, accordingly, is valid in many circumstances and is not unconstitutional on its face.

The statute is, however, unconstitutional as applied by the Parole Board in this case. Relying on the statute's exemption for parolees accused of violating conditions of parole on account of a conviction, the Board failed to accord petitioner a revocation hearing. The Parole Board's actions, taken pursuant to the statute, violated the

Fourteenth Amendment. Mich.Comp.Laws § 791.240a is therefore unconstitutional as applied in this case. *See Heinz v. McNutt,* 582 F.2d 1190 (9th Cir.1978) (Washington statute exempting from hearing requirements parolees convicted of crimes unconstitutional as applied).

In summary, in his Section 1983 case, petitioner is entitled to a declaration that any future proceedings to revoke his parole must include a parole revocation hearing meeting the requirements of *Morrissey* on the issues of both violation and mitigation, regardless of the provisions of Mich.Comp. Laws § 791.240a, the exclusionary language of which is unconstitutional as applied. All requests for injunctive relief should be dismissed under the holding of *Witzke v. Richardson.* In light of petitioner's recent filing of a second amended complaint, setting forth new theories of monetary recovery, adjudication of any claim for money damages would be premature.

### RECOMMENDED ORDERS

I recommend that the following final order be entered in case no. G88–325:

IT IS ORDERED AND ADJUDGED that the petition for habeas corpus be and hereby is GRANTED and that petitioner be enlarged within 45 days hereof unless he is first afforded a parole revocation hearing on the issue of mitigation, in accordance with the court's opinion.

In case No. G88–944, I recommend that the following order be entered:

IT IS ORDERED, ADJUDGED AND DECLARED that Mich.Comp.Laws § 791.240a is unconstitutional insofar as it provides that parolees accused of a parole violation based on a criminal conviction are not entitled to a fact-finding hearing on the issue of mitigation.

IT IS FURTHER ORDERED, ADJUDGED AND DECLARED that plaintiff is entitled to a fact-finding hearing on the issue of mitigation, with the procedures set forth in Mich.Comp.Laws § 791.240a, on any future parole revocation charges regardless of the nature of the charge.

IT IS FURTHER ORDERED that all claims for injunctive relief be and hereby are DISMISSED.

IT IS FURTHER ORDERED that proceedings on plaintiff's claims for damages, attorney fees and other monetary relief, as set forth in the second amended complaint, shall remain pending.

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters,* 638 F.2d 947 (6th Cir.1981); *see Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).